Virgil BREVAK, Plaintiff-Appellant, v. Genevieve M. BREVAK, Defendant-Respondent.

Court of Appeals

*No. 78–090. Submitted on briefs February 20, 1979.—*
*Decided May 17, 1979.*
(Also reported in 280 N.W.2d 329.)

For the plaintiff-appellant the cause was submitted on the brief of *Winston Binstock* of Madison.

For the defendant-respondent the cause was submitted on the brief of *DeBardeleben & Snyder* of Park Falls.

Before Dean, P.J., Foley, J., and Lewis J. Charles, Reserve Judge.

CHARLES, R. J.   The above matter, an action for divorce, was tried to the court on October 28, 1977 and on November 22, 1977. On March 7, 1978, *nunc pro tunc* the 29th day of December, 1977, an absolute divorce was granted to the defendant on her counterclaim. The judgment provided for a division of property. Child support and child custody were reserved for later decision following psychiatric and psychological evaluations

of the two older children to be made by personnel of the Northern Community Mental Health Center.

Each party was represented by experienced counsel, and the children were represented throughout by a competent guardian *ad litem.* On March 18, 1978, plaintiff's present counsel was substituted for trial counsel who had represented the plaintiff up to the date of the entry of judgment. The successor counsel, on May 16, 1978, moved the court for an order vacating the judgment, basing the motion on the absence in the court file of a reconciliation report from the family court commissioner. The motion to vacate was denied on July 5, 1978, and on July 18, 1978, the plaintiff took an appeal from that denial. We are faced here with only the validity of the order of July 5, 1978.

The record establishes that the family court commissioner interviewed the defendant, but has nothing in the affirmative upon which it could be found that he had an interview with the plaintiff. The latter denies that he ever received notice of any kind that he was to consult with the family court commissioner, although the defendant stated in an affidavit that he, the family court commissioner, informed her that he had asked the plaintiff to come to the office for a like interview.

The action was vigorously contested. The plaintiff indicated throughout the proceedings that a reconciliation was impossible and that he would be content with nothing less than an absolute divorce. The trial judge stated in his memorandum opinion of June 20, 1978 denying the motion to vacate:

The plaintiff, on direct examination, was asked if he felt that the marriage should legally be terminated and he said that he did. He was asked if he thought that a judgment of divorce should be granted to someone by the Court and he said that he did. He was asked whether or not he and the defendant seemed to have any show of love and affection anymore and he said that there was

none. He was asked if there had been any counseling and he said that there had been. He was asked if the counseling had been successful and he said that it had not.

In the same opinion, the trial court said that during the two days of trial, evidence had been received from a psychiatric social worker, a clinical psychologist, and one Sterling Nelson, the minister of a Lutheran church. The latter testified that before the commencement of the action he had engaged both parties in counseling in an attempt to save the marriage, but without success.

There is no doubt that among the statutory duties to be performed by the family court commissioner is the filing of a reconciliation report, and that report only, in contested divorce cases: "In a contested action no report other than the reconciliation certification specified in sub. (2) shall be made by the family court commissioner to the court." Section 247.081 (3), Stats. (1975).

The functions of a family court commissioner are dual in nature. Originally, it rested with the district attorney and then with the divorce counsel, to investigate the circumstances of the parties and make his recommendations to the court, to the end that, in the interest of the public, no judgment in an uncontested divorce action, tainted by collusion, connivance, or condonation, would be granted. *Subacz v. Subacz,* 183 Wis. 427, 433, 198 N.W. 372 (1924), citing sec. 2360, Stats. (1923).[1] Later there was added to his responsibilities that of endeavoring to promote reconciliation between the parties and to report to the court the efforts to that end.

While the supreme court has emphasized a number of times the importance of the family court commissioner

[1] Section 2360, Stats. (1923) provides:

No decree for divorce shall be granted if it appears to the satisfaction of the court that the suit has been brought by collusion, or that the plaintiff has procured or connived at the offense charged, or has condoned it, or has been guilty of adultery not condoned . . .

in the area of divorce and family law, its comments have been pointed at the performance of his duties in uncontested actions. It was said that in those actions, a failure to present the recommendations of the family court commissioner imperiled the validity of the judgment. In *de Montigny v. de Montigny*, 70 Wis.2d 131, 141, 233 N.W.2d 463, 469 (1975), we find this:

The family court commissioner remains an integral and necessary representative of the public interest in all divorce cases, and his recommendations under circumstances outlined in sec. 247.15, Stats., are a prerequisite to a valid judgment.

. . . We, however, invite the attention of trial courts and family court commissioners to the duties of that office as set forth in ch. 247. It is contrary to the legislatively expressed public interest, and may jeopardize the validity of a divorce judgment, if the family court commissioner either neglects to perform his statutory duties or is prevented from performing them by his premature and summary dismissal from the case.

We believe that the failure of the family court commissioner to investigate, appear, and make recommendations to the court in uncontested actions, is a far more serious irregularity than a failure to file a reconciliation certificate. Collusion, connivance, or condonation, are by their very nature not brought out during the trial by the parties themselves, and thus the duties of the family court commissioner in uncontested actions should be fully performed. But in contested actions, particularly the one with which we are here concerned, that of which the court should be made aware by the filing of a reconciliation certificate, is made plain by the testimony of the parties at the trial.

The supreme court in *de Montigny* did not dispose of that appeal on the failure of the family court commissioner to perform his duties saying "[s]ince the time for

appeal . . . has long since passed, we do not predicate our disposition of this appeal upon that deficiency." *de Montigny,* 70 Wis.2d at 141, 233 N.W.2d at 469. Coupling this with the expressions previously quoted from *de Montigny,* the last Wisconsin case touching upon the subject, we are satisfied that our case law is barren of precedent upon which we can predicate a holding that a divorce judgment, granted in a contested action without there being on file the reconciliation report, is either void or voidable. Being, then, compelled to make an initial resolution of the problem, we hold such judgments to be voidable rather than void.

As earlier stated, each party and the public were well and ably represented; each counsel, of a surety, knew that sec. 247.081(3), Stats. (1975) directed the making to the court of a reconciliation report. The court file was at all times during the course of the proceedings available for inspection and the absence of the report readily ascertainable.

The trial proper occupied the court for two full days. In addition, there were heard numerous motions and countermotions, each party charging the other with various defaults and delinquencies. To rule here as null and void all judgments having the one defect of which the plaintiff-appellant complains, would permit a dissatisfied litigant, such as is the plaintiff-appellant here, to retry his case from its inception. To so hold would not promote the interests of the public and would constitute an unthinking adherence to a literal reading of the applicable statutes.

By ruling that such judgments are voidable rather than void, we permit the trial judge, on motion, to review all of the surrounding circumstances, evidentiary and procedural, and then vacate or refuse to vacate the judgment as the interests of the parties, the interest of the public, and the ends of justice may require.

Having held this to be a voidable judgment, we next consider whether the trial judge was correct in refusing its vacation.

In *Heinemann v. Heinemann*, 202 Wis. 639, 233 N.W. 552 (1930), the district attorney, then charged with performing the duties later assigned to the divorce counsel and, still later, reassigned to the family court commissioner, failed to appear at the divorce hearing, and the answer and counterclaim of the defendant, upon which the defendant was granted a divorce from a non-testifying plaintiff, was not served upon him. The district attorney, after the divorce was granted, approved the findings made by the court. The supreme court, although recognizing that ch. 247 required that the district attorney *shall* appear at default hearings, and *shall* be served with all pleadings, nonetheless affirmed the judgment, ruling that the provisions of the statutes were substantially satisfied. In other words, though the antecessor of the family court commissioner was, and the family court commissioner is now, required to be present at a default hearing[2] and be served with all pleadings,[3] if the purpose of the statutes was accom-

---

[2] Section 247.14, Stats. (1975) provides:

In any action affecting marriage, the plaintiff and defendant shall, either within 20 days after making service on the opposite party of any pleading or before filing such pleading in court, serve a copy of the same upon the family court commissioner . . . whether such action is contested or not. No judgment in any such action shall be granted unless this section is complied with, or unless the parties have responded to the family court commissioner's inquiries under s. 247.15 except when otherwise ordered by the court.

[3] Section 247.15(1), Stats. (1975) provides:

No judgment in any action in which the family court commissioner is required by s. 247.081(1) or 247.14 to appear or otherwise discharge his duties under this chapter shall be granted until such commissioner in behalf of the public has made a fair and impartial investigation of the case and fully advised the court as to the merits of the case and the rights and interests of the parties and the public and the efforts made toward reconciliation of the

plished by means other than those mandated by statute, the judgment should not be vacated or reversed.

Here, the only purpose that could have been served by the filing of reconciliation certificates was that of making the trial court aware of what had been done with respect to reconciliation, and that such efforts as were made had been unsuccessful. During the course of the proceedings, the trial court was made fully aware that counseling had been had, prior to the commencement of the action, in an endeavor to save the marriage, but to no avail. The judge was fully aware of the attitude of the plaintiff, as well as that of the defendant, towards reconciliation, and that any attempt at reconciliation made by the family court commissioner, beyond what was done, would have been an exercise in futility. The purpose to be accomplished by the filing of the reconciliation certificate was accomplished by means other than those spelled out in the statutes. Thus, following the expressions of the supreme court in *Heinemann,* the plaintiff should not be permitted to take advantage of the irregularity of which he complains and be granted the right to retry a long, involved divorce case which has once been fully and fairly tried to judgment.

Turning to sec. 805.18(1), Stats.,[4] no substantial right of the plaintiff was affected by the failure to file the reconciliation certificate. The three interested parties (not including the children) were the husband, the wife, and the public. The wife claims no prejudice, the husband can claim none because he wanted, from the be-

parties or the reason such reconciliation attempt has not been made.

[4] Section 805.18(1), Stats. (1975) provides:

The court shall, in every stage of an action, disregard any error or defect in the pleading or proceedings which shall not affect the substantial rights of the adverse party.

ginning, no part of a reconciliation. This leaves the state, in whose interest it is that efforts be made to keep a marriage intact. But the state suffered no harm or prejudice for, as was made abundantly apparent to the trial court, the marriage could not be saved, and efforts pointed at saving it were hopeless from the beginning.

■

Notice of the appeal of the order and all the documents relating thereto were served upon the representative of the public, the present family court commissioner of Bayfield County. He has not participated in this appeal, although he had the right to make an appearance on behalf of the public. *Masters v. Masters,* 13 Wis.2d 332, 342, 108 N.W.2d 674 (1961). We shall consider his nonappearance as an acquiescence in the validity of the judgment and his concurrence in our conclusion that the substantial rights of the public were not affected.

■

That noncompliance with a statute mandatory on its face does not require reversal was made apparent by the supreme court in *Federal Land Bank v. Olson,* 239 Wis. 448, 452, 1 N.W.2d 752, 753 (1942) :

"Irregularity in the proceeding leading to the entry of a judgment as distinguished from mere error is ground for vacating the judgment providing the irregularity renders the judgment void or is prejudicial or dangerous to the substantial rights [and interest] of the party affected." 34 C.J. 274, sec. 495, and cases cited, note 81.

The irregularity in the case just above cited was a failure of the plaintiff to serve on the defendant an eight days notice of application for entry of judgment required by sec. 270.62(2), Stats. (1939). The court held that sec. 269.43, Stats. (1942), the predecessor of sec. 805.18(1), Stats., commanded the court to disregard the irregularity as not affecting the substantial rights of the adverse party.

This court, in *Canadian Pacific Ltd. v. Omark-Prentice Hydraulics,* 86 Wis.2d 369, 272 N.W.2d 407 (Ct. App. 1978), dealt with the provisions of sec. 801.09(2)(a), Stats. (1975), which says:

The summons shall contain:

. . . .
(2) . . . The summons shall further direct the defendant to serve the answer or demand for a copy of the complaint:
(a) Within 20 days . . . .

The summons omitted the provisions directly that the answer or demand for a copy of the complaint be served within twenty days. Although the statute, as is that requiring the filing of the reconciliation report, is phrased as absolute, "The summons *shall* . . ." the court, invoking the provisions of sec. 805.18(1), Stats., held that the irregularity upon which the defendant relied did not affect its substantial rights and ordered a trial on the merits.

In summary, though the purpose of the statutes requiring the filing of a reconciliation certificate was substantialy satisfied, the failure to file was, nonetheless, an irregularity; but one, however, which in no way prejudiced the only party, the plaintiff, desiring to take advantage of such irregularity. Accordingly, under the authority of sec. 805.18(1), Stats., we hold that the irregularity did not vitiate the judgment of March 7, 1978, and the order denying the motion to vacate is affirmed.

The defendant-respondent has applied for double costs, citing a number of instances wherein the plaintiff-appellant failed to comply with the Rules of Appellate Procedure. We deem them *de minimus* and the application is denied.

*By the Court.*—Order affirmed.