IN RE the MARRIAGE OF:
Ilona PREISS, Petitioner-Respondent,

v.

Alfred PREISS, Respondent-Appellant.

Court of Appeals

*No. 99–3261. Submitted on briefs June 7, 2000.—Decided July 26, 2000.*

2000 WI App 185

(Also reported in 617 N.W.2d 514.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Thomas W. Anderson, Jr.* of *Anderson, Sumpter & Anderson, S.C.*, Kenosha.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Jerold W. Breitenbach*, Kenosha.

Before Brown, P.J., Nettesheim and Anderson, JJ.

¶ 1. ANDERSON, J.  Alfred Preiss appeals from the property division and maintenance provisions of a divorce judgment. He argues that the circuit court erroneously exercised its discretion by: (1) considering Alfred's sick leave account as an asset suitable for division; (2) dividing Alfred's deferred compensation plan pursuant to a qualified domestic relations order

(QDRO); (3) including the couple's bank account balance prior to the filing for divorce as an asset in his portion of the marital estate; (4) requiring Alfred's pension to be divided as of the date he began to receive it; (5) holding open the maintenance decision; and (6) improperly valuing the couple's vehicles. Having reviewed the record, we agree with Alfred on two points. The court's decisions that the sick leave account was an asset of the marital estate and that the deferred compensation plan was to be divided pursuant to a QDRO are both erroneous; accordingly, we reverse these components of the property division. We affirm the remaining rulings.

BACKGROUND

¶ 2.   Alfred and Ilona Preiss were married on December 22, 1972. During their twenty-six-year marriage, the couple had two children who are now adults. They were divorced on November 8, 1999. At the time of divorce, Alfred, age fifty-seven, was retired from the Department of Corrections; and Ilona, age fifty-one, was working at a part-time factory job.

¶ 3.   The court made these findings of fact. During the marriage, Alfred was the primary wage earner. Ilona has a college degree and is in good health. Although Alfred retired during the pendency of the divorce, he was not required to do so because of his poor health and could work if he so chose. Alfred receives a weekly income of $527.17 from his pension. Ilona earns $379.60 a week at her factory job.

¶ 4.   With respect to property, the court determined that the marital estate would be divided equally. Ilona was awarded the family home and its furnishings with a net value of $147,337.12. She also received two IRA accounts valued at $18,460.22. Stocks and an addi-

tional IRA account with a net value of $32,361.05 were awarded to Alfred. The court valued each of the couple's four vehicles at $800, awarding two vehicles to each party.

¶ 5. Before the divorce was commenced, the couple's bank account had a balance of $3,264. At that time, Alfred withdrew almost all of the funds. He claimed that he legitimately used the money to set up his household. The court disagreed, concluding that Alfred had sufficient funds from other sources for this purpose. The bank account amount was thus included as one of Alfred's assets.

¶ 6. Alfred's pension was considered an asset to be divided equally by a QDRO. The court acknowledged that Alfred had made a unilateral decision to retire while the divorce was pending, and once he made that decision, he quit making maintenance payments to Ilona as required by the temporary order. Considering these circumstances, the court ordered that the pension would be divided equally as of the day Alfred began drawing it out.

¶ 7. The court awarded Alfred's $242,591.13 interest in a deferred compensation plan equally to the parties. It determined that this asset was to be divided by a QDRO. On December 9, 1999, Ilona moved the court to reopen judgment on this issue because WIS. STAT. § 40.08(1) (1997–98)[1] did not permit this asset to be divided by a QDRO. The court declined to reopen the matter while the judgment was on appeal.

¶ 8. The asset the court deemed "the most difficult to assess" was Alfred's unused sick leave account valued at $70,000. Although Alfred could not withdraw for cash the value of these funds, he did have this

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

amount available to offset his $500 per month health insurance costs. This created a disparity between the parties, the court noted, because Ilona would have to pay $389.15 a month to cover her health insurance costs. The court determined that this amount less tax consequences should be divided equally between them.

¶ 9. After considering several factors, the court decided to not award maintenance to either party but to hold open the decision should the parties' circumstances change. Alfred appeals.

DISCUSSION

**Division of the Marital Estate**

¶ 10. On appeal, Alfred raises several arguments contesting the circuit court's division of the marital estate. The division of a marital estate is governed by WIS. STAT. § 767.255, which creates a presumption that the property will be divided equally. Determining the appropriate property division in a divorce case is a decision left to the discretion of the circuit court. *See Liddle v. Liddle*, 140 Wis. 2d 132, 136, 410 N.W.2d 196 (Ct. App. 1987). The term "discretion" encompasses a process of reasoning by the court based on the facts in the record or those facts reasonably derived by inference from the record and that produces a conclusion based on logic and founded on proper legal standards. *See Johnson v. Johnson*, 157 Wis. 2d 490, 497, 460 N.W.2d 166 (Ct. App. 1990). We will sustain the court's decision if it examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *See Liddle*, 140 Wis. 2d at 136.

## A. *Sick Leave Account*

¶ 11.    Alfred first challenges the court's decision to include the value of his sick leave account as an asset of the marital estate. The circuit court placed a $70,000 value on Alfred's accumulated sick days and considered it an asset for division between the parties. The court determined that because Alfred was using the sick leave account to defray the cost of his health insurance payments and Ilona would have to pay her health insurance premiums out of pocket, the account should be considered as an asset.

¶ 12.    Alfred objects to the court's decision because the account can never be cashed out or transferred. The account will terminate upon his death and can only be used for credit towards the employer's health insurance coverage, he contends. It does not have a fair market value. We agree.

¶ 13.    As a former employee of the State of Wisconsin, Alfred's employment benefits are governed by WIS. STAT. ch. 40. WISCONSIN STAT. § 40.04(10) provides for an "accumulated sick leave conversion account" from which "[p]remium payments to health insurers" can be deducted once the employee retires. *See also* WIS. STAT. § 40.05. Via its website, the Department of Employe Trust Funds describes the sick leave account benefit as follows:

> As a state employe you earn hours of sick leave credit while you are employed. When you retire these sick leave hours are converted to credits to pay health insurance premiums. The amount available to pay premiums is calculated by multiplying the number of accrued sick leave hours times your hourly rate of pay when you retire. *These sick leave*

*credits can be used only to pay your group health insurance premiums; they have no cash value.*

Wisconsin Department of Employe Trust Funds, *Health Insurance* (visited July 11, 2000) <http://badger.state.wi.us/agencies/etf/ben/ben13p21.html> (emphasis added).

¶ 14. We determine that Alfred's sick leave account was erroneously considered an asset of the marital estate. Alfred cannot convey his interest in the account; he cannot gift it; he cannot transfer it. Because the account has no cash value and cannot be sold or transferred, it also does not have a fair market value. "Property to be divided at divorce is to be valued at its fair market value. Fair market value assumes sale by one who desires but is not obligated to sell and purchase by one willing but not obligated to buy." *Sommerfield v. Sommerfield*, 154 Wis. 2d 840, 853, 454 N.W.2d 55 (Ct. App. 1990) (citations omitted). A transaction that would determine the property's fair market value cannot be made. If property has no fair market value, the court cannot place an independent value upon it, and it should thus not be included as an asset in the marital estate.

¶ 15. The account does indeed have an intrinsic value. It has value to Alfred, but this value is not accessible to anyone else. In *Wall v. Wall*, 215 Wis. 2d 595, 573 N.W.2d 862 (Ct. App. 1997), we considered property with similar characteristics. In that case, we evaluated whether an employer's gift of two vacations to the respondent should be considered as income for determining ability to pay child support. Concluding that the vacations were not income for this purpose, we reasoned that "this [wa]s a trip that he could not trade, he couldn't sell, he couldn't take it in lieu of cash . . . .

[H]e had to take it or lose it." *Id.* at 600–01. This rationale also applies to the present case.

¶ 16.   We note that our current case concerns the property division of a marital estate. If maintenance or child support were at issue, then the fact that Alfred receives his health insurance premiums through the sick leave account would likely be considered in determining his living expenses and his ability to pay maintenance or child support. The vacations in *Wall* were not considered as income for such a matter because they were not assets used for necessities like fuel or food. *See id.* at 602–03. The *Wall* court explained that if the respondent took the vacations, he did not "free up money that he would otherwise have to expend." *Id.* It would be a different matter if one were considering the necessity of health insurance coverage.

¶ 17.   In summary, we determine that the circuit court's inclusion of the sick leave account as an asset for division was clearly erroneous. This component of the property division is therefore reversed.

### B.   Deferred Compensation Plan

■

¶ 18.   The circuit court ordered that Alfred's deferred compensation plan be divided by a QDRO. Both parties agree that this was an error because WIS. STAT. § 40.08(1) does not permit the division of a deferred compensation plan pursuant to a QDRO. Section 40.08(1) states: "The benefits payable to . . . any member . . . under any of the benefit plans administered by the department . . . shall not be assignable, either in law or equity, or be subject to execution, levy, attachment, garnishment or other legal process except as specifically provided in this section . . . ." We agree that this statute precludes the division of the plan by a

QDRO. Accordingly, we reverse the court's decision as to this part of the property division.

### C. Bank Account

¶ 19. Alfred next disputes the court's decision to include the amount of the couple's bank account in his half of the estate. Shortly before the divorce action was filed, Alfred withdrew over $3,000 from the couple's joint checking account, leaving a balance of only $54. He argues that he used these funds for legitimate household purposes and that the record is devoid of evidence to the contrary. In its findings of fact, the court determined that when the divorce was filed, Alfred's gross income was $900 a week and Ilona's gross income was $500 a week. Based on these findings, the court reasoned that Alfred had sufficient funds available to cover these expenses and noted that Ilona had similar expenses because she was responsible for the home mortgage. We conclude that these facts support the court's exercise of discretion in this matter and find no error.

### D. Pension Plan

¶ 20. Alfred does not suggest that the court's division of his pension plan was improper. He instead disputes the court's decision to make the division begin on the date Alfred began to receive his pension payments and not the date of the divorce. Generally, marital assets are to be valued and divided as of the date of the divorce. *See Bussewitz v. Bussewitz*, 75 Wis. 2d 78, 82, 248 N.W.2d 417 (1977). Special circumstances can warrant a deviation from the rule. *See Roeder v. Roeder*, 103 Wis. 2d 411, 418, 308 N.W.2d 904 (Ct. App. 1981).

¶ 21. Ilona counters that special circumstances were present in this case. She argues that:

> [Alfred] never sought leave of the court to modify his temporary maintenance obligation requesting the right to retire. The Temporary Order required Mr. Preiss to pay $75.00 per week based upon his income from the Department of Corrections. When he retired he simply quit paying.

We agree that these facts are sufficient to support the court's determination that special circumstances were present and a deviation from the general rule was warranted. We find no erroneous exercise of discretion on this point.

### E. Maintenance

■

¶ 22. Alfred's next argument concerns the court's decision to hold open a determination on awarding maintenance. He claims that the court should have disregarded his pension payments as income and awarded him maintenance. A court is not precluded from holding open a determination on maintenance. *Cf. Lundberg v. Lundberg*, 107 Wis. 2d 1, 12, 318 N.W.2d 918 (1982). A court must, however, consider the maintenance factors detailed in WIS. STAT. § 767.26. In its findings of fact, the court explained its reasons for holding open maintenance. The record supports the court's reasoning. We conclude, therefore, that the court properly exercised its discretion regarding the maintenance award.

## F. Vehicles' Valuation

■

¶ 23.   Alfred's final contention regards the value the court placed on the couple's vehicles. The court valued each of the couple's four vehicles at $800. Alfred argues that this was an erroneous exercise of discretion because the court did not explain the reasons for its valuation. We choose not to address this argument in detail because, even if an error were found, it would only be *de minimus*. *See Brevak v. Brevak*, 90 Wis. 2d 556, 565, 280 N.W.2d 329 (Ct. App. 1979). The vehicles' valuation is affirmed.

CONCLUSION

¶ 24.   We affirm the circuit court's decision to include the bank account funds as part of Alfred's estate, to order the pension plan divided as of the date Alfred began receiving it, to hold open maintenance and to value the vehicles at $800 each. However, we conclude that the court erroneously exercised its discretion by considering the sick leave account an asset of the marital estate and by ordering the deferred compensation plan to be divided pursuant to a QDRO. We reverse these two components of the property division and remand for further proceedings consistent with this opinion.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.