STATE of Wisconsin, Plaintiff-Respondent, ††

v.

Mark M. LOUTSCH, Defendant-Appellant.†

Court of Appeals

*No. 02–1755–CR: Submitted on briefs November 11, 2002.—
Decided December 26, 2002.*

2003 WI App 16

(Also reported in 656 N.W.2d 781.)

---

† Petition to review denied 3-13-03.
†† Petition for cross-review denied 3-13-03.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Charles Bennett Vetzner*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *David J. Becker*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Vergeront, P.J., Dykman and Roggensack, JJ.

¶ 1. VERGERONT, P.J. Mark Loutsch appeals a judgment of conviction and an order requiring that he pay restitution in the amount of $33,167.44; he also appeals the order denying postconviction relief. Loutsch contends the trial court erred in ordering him to pay restitution for a victim's use of sick leave because the loss was too speculative and not supported by the record. He also contends the court erred in failing to consider his limited ability to pay and in failing to consider, as provided in WIS. STAT. § 973.20(5)(d),[1] whether justice required restitution to the insurers.

¶ 2. We conclude the victim's loss of sick leave is "special damages" within WIS. STAT. § 973.20(5)(a) and therefore the court had the authority to award restitution for the sick leave the victim used, and the record supports the amount ordered, $26,257.52. We also conclude that, when a defendant presents evidence of his ability to pay, the trial court is not authorized to defer adjusting the amount of restitution based on ability to pay; rather, the court must make a determination of the reasonable amount of restitution the defendant will be able to pay within the term of the sentence. Accordingly, we affirm in part, reverse in part and remand for further proceedings. On remand, the court will have the opportunity to consider whether justice requires restitution to the insurers as provided in § 973.20(5)(d).

## BACKGROUND

¶ 3. Loutsch was convicted of fleeing in violation of WIS. STAT. § 346.04(3); two counts of first-degree recklessly endangering safety in violation of WIS. STAT. § 941.30(1); two counts of criminal damage to property

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

in violation of WIS. STAT. § 943.01(1); intimidation in violation of WIS. STAT. § 940.45(1); battery in violation of WIS. STAT. § 940.19(6); and resisting in violation of WIS. STAT. § 946.41. The charges arose out of an incident that began with an altercation between Loutsch and his father-in-law. State Trooper Arden Asp received a radio transmission in his squad car to be on the lookout for Loutsch, who had left his father-in-law's house. When Asp located Loutsch driving his car, he attempted to pull Loutsch over. Eventually both cars stopped and Loutsch rammed the back of his car into the front of Asp's vehicle two times. As a result of that collision, Asp aggravated a pre-existing wrist injury and required an operation.

¶ 4. After the jury found Loutsch guilty of the charges, the court imposed sentences that resulted in a combined prison term of three years, with 159 days of sentence credit; a combined extended supervision period of four and one-half years; and five years' consecutive probation. The court then held an evidentiary hearing on the issue of restitution. The State submitted a restitution summary, which requested $33,167.44 in restitution. One item was Asp's use of his sick leave, which, the summary alleged, was a loss to him of $26,257.52, and the court heard testimony on this.[2]

---

[2] The trial court rejected Loutsch's argument that the restitution should be reduced because of Asp's testimony that a few weeks before he returned to his regular job he was offered light duty at district headquarters, which he declined. In his first brief on appeal, Loutsch contends that this was an error, because Asp failed to mitigate his damages. The State responds that the burden was on Loutsch to establish that Asp failed to mitigate his damages, and the record does not show that Asp's decision was not justified. Loutsch does not reply to this argument, and we therefore take it as a concession and do not

¶ 5. Asp testified at the hearing that he used 552 hours of sick leave. His employment contract provided that, upon retirement, all the hours of his unused sick leave would be multiplied by two and then by his hourly rate of pay at the time of retirement to create a fund for health insurance premiums. The court concluded that the loss of sick leave was a real loss that Asp suffered, and it accepted the State's calculation that 552 hours times two times Asp's hourly wage equaled $26,257.52.

¶ 6. The court also heard testimony on Loutsch's financial situation. Loutsch testified that he had a high-school diploma and, at the time of the incident leading to the charges, he was working on a commission basis for Direct TV making between $586 to $800 a week, depending on the available work. The most he had ever made as an hourly wage was $8.99, which was in 1995 when he did factory work through a temporary agency. In prison, he was making eight cents an hour for a forty-hour week, and he might be able to earn eighteen or twenty-seven cents an hour. He was going through a divorce and had a child support obligation that he believed would accrue while he was incarcerated and would be $15,000 when he was released.

¶ 7. The court decided that Loutsch had not established "good cause" for the court to enter a figure for a lesser amount than full restitution. The court stated that it could not predict what Loutsch was going to be able to pay, that the possibility "always exists that the unforeseen and unexpected may happen and [Loutsch] may in fact have the ability to pay the restitution at some point in the future . . . ." It was not the legislature's intention, the court concluded, that a court

address this issue further. *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994).

limit the opportunity of the victims to recover the amount they were entitled to in restitution. The court reasoned that it had continuing jurisdiction over the issue of payment, such that if Loutsch made a good faith effort to pay, the court had the authority to discharge him from the obligation or enter a civil judgment rather than extending his probation because he had not paid off the restitution.

¶ 8. The court entered an order of restitution in the amount of $33,167.44. Loutsch moved for relief from the restitution order, and the court denied the motion. During that hearing, the court accepted Loutsch's counsel's representation that Loutsch's divorce had become final and he was ordered to pay after release from prison 25% of his gross income as support for his two children.

## DISCUSSION

*Loss of Sick Leave*

¶ 9. We first address Loutsch's contention that the trial court did not have the authority to order restitution for the loss of Asp's sick leave. According to Loutsch, Asp's used sick leave is not a compensable loss for purposes of restitution, because it has no present monetary value and the future value is too speculative.

¶ 10. A resolution of this issue requires us to interpret and apply Wis. Stat. § 973.20, which governs restitution in criminal cases. The interpretation of a statute and application to a given set of facts presents a question of law, which we review de novo. *State v. Evans*, 2000 WI App 178, ¶ 12, 238 Wis. 2d 411, 617 N.W.2d 220.

¶ 11. When imposing a sentence, a court must order "full or partial restitution . . . unless the court finds substantial reason not to do so and states the reason on the record." WIS. STAT. § 973.20(1r). Sections (2) and (3) specify particular types of restitution for categories of crimes.[3] Section (5) addresses restitution in "any case" and provides in part:

---

[3] WISCONSIN STAT. § 973.20(2) and (3) provides:

(2) If a crime considered at sentencing resulted in damage to or loss or destruction of property, the restitution order may require that the defendant:

(a) Return the property to the owner or owner's designee; or

(b) If return of the property under par. (a) is impossible, impractical or inadequate, pay the owner or owner's designee the reasonable repair or replacement cost or the greater of:

1. The value of the property on the date of its damage, loss or destruction; or

2. The value of the property on the date of sentencing, less the value of any part of the property returned, as of the date of its return. The value of retail merchandise shall be its retail value.

(3) If a crime considered at sentencing resulted in bodily injury, the restitution order may require that the defendant do one or more of the following:

(a) Pay an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric and psychological care and treatment.

(b) Pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation.

(c) Reimburse the injured person for income lost as a result of a crime considered at sentencing.

(d) If the injured person's sole employment at the time of the injury was performing the duties of a homemaker, pay an amount sufficient to ensure that the duties are continued until the person is able to resume performance of the duties.

(5) In any case, the restitution order may require that the defendant do one or more of the following:

(a) Pay all special damages, but not general damages, substantiated by evidence in the record, which could be recovered in a civil action against the defendant for his or her conduct in the commission of a crime considered at sentencing.

¶ 12. The distinction between general and special damages as relevant to WIS. STAT. § 973.20(5)(a) is well established. "General damages" under this statute are those that compensate the victim for damages such as pain and suffering, anguish or humiliation, while "special damages" encompass " 'harm of a more material or pecuniary nature.' [Citation omitted.]" *State v. Holmgren*, 229 Wis. 2d 358, 365, 599 N.W.2d 876 (Ct. App. 1999). The ultimate question in deciding whether an item of restitution is "special damages" within the meaning of the statute is whether it could be recovered as special damages in a civil proceeding. *State v. Rouse*, 2002 WI App 107, ¶ 12, 254 Wis. 2d 761, 768, 647 N.W.2d 286. In deciding whether the loss of Asp's sick leave is a "special damage" within the meaning of § 973.20(5)(a), we bear in mind that the purpose of restitution is to return victims of a crime to the position they were in before the defendant injured them. *Holmgren*, 229 Wis. 2d at 366. We therefore construe the restitution statute broadly to allow victims to recover their losses resulting from the criminal conduct. *Id.*

¶ 13. Loutsch argues that our decision in *Preiss v. Preiss*, 2000 WI App 185, 238 Wis. 2d 368, 617 N.W.2d 514, supports his position that Asp's used sick leave does not have a present monetary value and therefore is not "special damages." In that divorce action, we con-

cluded the trial court erred in placing a $70,000 value on the retired spouse's accumulated sick leave account and including it as an asset in the marital estate. *Id.* at 375. Under the terms of his employment, the hours of sick leave times the hourly rate of pay resulted in an amount that was being credited against his health insurance premiums, and that is the reason the trial court had considered it an asset. *Id.* at 374. We concluded that, because the spouse could not convey his interest in the sick leave account, it did not have a fair market value, and property without a fair market value should not be included as an asset in the marital state. *Id.* at 375. We did recognize that the sick leave account had a value to the retired spouse, but that value was not accessible to anyone else. *Id.* We also observed that, if maintenance or child support were an issue, the fact that the spouse received health insurance premiums through his sick leave account would likely be considered in determining his living expenses and his ability to pay child support or maintenance. *Id.* at 376.

¶ 14. We do not view *Preiss* as determining the outcome in this case. It is true that Asp, like the retired spouse in *Preiss*, cannot transfer his interest in his accumulated sick leave, and therefore it does not have a fair market value. However, the law of damages in personal injury cases compensates for many losses to which one cannot attach a fair market value. The pertinent question in this case is whether an injured plaintiff in a personal injury action could recover as an item of special damages the value of sick leave used as a result of the injury, when the leave if unused would be available upon retirement to pay for health insurance premiums according to a specified formula. *Preiss* simply does not address this issue—although we did in *Preiss* recognize that the retired spouse's use of the

accumulated sick leave as a credit against health insurance premiums did have value to the spouse and did actually affect the spouse's financial situation.

¶ 15. We have found no Wisconsin case that has considered whether injured persons may be compensated for use of sick leave in circumstances similar to this case. However, insofar as the trial court in this case placed a dollar value on the loss to Asp in the future for the sick leave he used, we view loss of future earning capacity to be an instructive analogy. Loss of future earning capacity is a proper element of special damages in personal injury actions. *See Musa v. Jefferson County Bank*, 2001 WI 2, ¶ 30, 240 Wis. 2d 327, 339, 620 N.W.2d 797 ("[a]mong the items often classified as special damages are . . . the impairment of earning capacity. (Citation omitted.)"). Loss of future earning capacity is the difference between what a person will reasonably be able to earn in the future, in view of the injuries sustained, and what he or she would have been able to earn had there been no injury. WIS JI—CIVIL 1762. Courts recognize that many elements that go to proof of loss of earning capacity cannot be established with certainty, and the fact finder must be allowed to consider "the reasonably apparent probabilities as they appear from the evidence, together with []known facts . . . ." *Reinke v. Woltjen*, 32 Wis. 2d 653, 660, 146 N.W.2d 493 (1966). Juries are regularly instructed that in determining loss of future earning capacity they "are not required . . . to base [the determination] on evidence which is exact or precise but rather upon evidence which, under all the circumstances of the case, reasonably supports [their] determination of damages." WIS JI—CIVIL 1762.

¶ 16. We conclude that determining the monetary value of the sick leave Asp used involves no more

speculation, and arguably involves less, than determining the amount of future lost earning capacity. The precise number of hours Asp used as a result of the injury is known, and it is certain that Asp will not have those hours available to him upon retirement to pay for his health insurance premiums. The precise formula by which those 552 hours would have been converted to dollars to pay for health insurance premiums upon retirement is also known. Hourly wage at the time of retirement may be estimated or, as in this case, the current wage may be used: it is reasonable to infer that Asp's hourly wage at retirement will be no lower than his present hourly wage.

¶ 17. Loutsch points out that Asp may unexpectedly die before he retires, but that possibility exists every time a plaintiff in a personal injury action is compensated for a future loss. That mere possibility is not sufficient to prevent plaintiffs in personal injury actions from recovering for loss of future earning capacity—or for other special damages that compensate for losses that will not occur until the future, such as future medical and health care expenses. *See, e.g.,* WIS JI—CIVIL 1758. We see no reason why any more certainty should be required for the recovery of future pecuniary losses in the context of restitution. We therefore conclude that the trial court did have the authority to order restitution for Asp's loss of sick leave.

¶ 18. Our conclusion is not inconsistent with *State v. Handley*, 173 Wis. 2d 838, 496 N.W.2d 725 (Ct. App. 1993), on which Loutsch relies. In that case, we reversed the trial court's order of restitution in the amount of $1,000 for future counseling costs for the victims. The victims had testified that they had not received counseling and did not think they would need

913

it, and their mother testified she did not think they would need it. *Id.* at 840–41. We reversed because the record did not support a future need for counseling. *Id.* at 843. Nothing in our decision suggests that, had there been evidence that counseling would be needed in the future, the trial court did not have the authority to order restitution for an amount that would probably be needed to compensate for that future counseling.

¶ 19. In the alternative, Loutsch contends that, even if the court had the authority to compensate Asp for the used sick leave as "special damages," Asp did not meet his burden of establishing the value of the used sick leave. Since the burden is on the victim to demonstrate the amount of loss by a preponderance of the evidence, WIS. STAT. § 973.20(14)(a), Loutsch asserts that Asp had to establish his current age, his expected age at retirement, the amount of sick leave he anticipated he would have on that date, his actual and expected health care costs, and the number of dependents covered by his insurance. Loutsch's point is that perhaps Asp would have enough accumulated sick leave without the 552 hours to pay for all the health insurance he needed from the date of his retirement until his death.

¶ 20. When the trial court has the authority to order restitution for a loss, the court's decision to order restitution in a particular amount is committed to the trial court's discretion. *Holmgren*, 229 Wis. 2d at 366. However, because Loutsch is questioning whether the record in this case is sufficient to support restitution in any amount for Asp's used sick leave, we view the question as one of law, and therefore our review is de novo. *See id.* at 366 (conclusions of law may underlie discretionary decisions, and we review these de novo).

¶ 21. We do not agree with Loutsch that Asp had to present evidence on all the points Loutsch raises in order to meet the victim's burden under WIS. STAT. § 973.20(14)(a). A restitution hearing is not the equivalent of a civil trial and does not require strict adherence to the rules of evidence and burden of proof. *Holmgren*, 229 Wis. 2d at 367. We conclude the evidence Asp did present was sufficient for the trial court to decide it was reasonably probable that Asp would suffer a pecuniary loss in the future as a result of using his sick leave, and sufficient to provide a reasonable basis for determining the probable amount of the loss. Loutsch had the opportunity, through cross-examination of Asp, to present evidence that Asp would not need some or all of the 552 hours of sick leave to pay for health insurance upon retirement, but Loutsch did not do that. *See id.* at 372 (testimony that audit costs were reasonable was sufficient prima facie case to authorize imposition of those costs as restitution; burden was then on defendant to show that portions were inappropriate).

*Ability to Pay*

¶ 22. Loutsch contends the trial court erred by not considering his limited ability to pay in setting the amount of restitution, but instead deferring that decision until after his release from prison when his ability to pay and efforts to pay would be easier to determine. The State responds that the court did consider Loutsch's ability to pay, but decided not to reduce the amount of restitution based on it, and this was reasonable because, in view of Loutsch's prison sentence, it was difficult to predict what his future ability to pay would be. According to the State, the trial court's reasoning that the amount of restitution could later be

reduced if he could not pay it all is proper and is supported by *State v. Dugan*, 193 Wis. 2d 610, 534 N.W.2d 897 (Ct. App. 1995).

¶ 23. As we understand the court's decision, it viewed Wis. Stat. § 973.20 as authorizing deferral of the determination of Loutsch's ability to pay because of the difficulty in deciding now what his financial situation would be after his release from prison and during his extended supervision and probation. The threshold question, therefore, is whether this is a correct interpretation of the statute or whether, as Loutsch argues, the court was required to determine now the amount of restitution he would be able pay during his sentence. Because this presents a question of law, our review is de novo. *Evans*, 2000 WI App 178, ¶ 12. Because several statutory provisions are involved, we consider them together and attempt to harmonize them. *State v. Robinson*, 140 Wis. 2d 673, 677, 412 N.W.2d 535 (Ct. App. 1987).

¶ 24. Wisconsin Stat. § 973.20(13)(a) provides:

(13)(a) The court, in determining whether to order restitution and the amount thereof, shall consider all of the following:

1. The amount of loss suffered by any victim as a result of a crime considered at sentencing.

2. The financial resources of the defendant.

3. The present and future earning ability of the defendant.

4. The needs and earning ability of the defendant's dependents.

916

5. Any other factors which the court deems appropriate.

When restitution is ordered, it becomes a condition of probation, extended supervision or parole, and, after the termination of those, restitution is enforceable in the same manner as a judgment in a civil action by the victim. Section 973.20(1r). Under § 973.20(10), the court may require that restitution "be paid immediately, within a specified period or in specified installments. If the defendant is placed on probation or sentenced to imprisonment, the end of a specified period shall not be later than the end of any period of probation, extended supervision or parole."

¶ 25. Read together, these sections plainly contemplate that the court order at sentencing an amount of restitution that it determines the defendant will be able to pay before the completion of the sentence—in this case, during the term of imprisonment and subsequent extended supervision and probation. These sections do not permit a court to defer consideration of the defendant's ability to pay when evidence of the defendant's ability to pay is presented. The reference to "present and future earning ability of the defendant," WIS. STAT. § 973.20(13)(a)3, plainly contemplates that the court will be making a prediction of what a defendant will be able to pay in the future.

¶ 26. We do not agree that the provision in WIS. STAT. § 973.20(1r) allowing restitution to be reduced to judgment at the end of the sentence indicates a contrary intent. That subsection allows a victim to collect the full amount of restitution ordered; it does not alter the mandate for the court to take the defendant's ability

917

to pay into account when imposing the restitution order. If we were to adopt the State's view, the mandate for the court to take into account the defendant's ability to pay and the authorization for ordering partial restitution would be meaningless: full restitution would be ordered in all cases regardless of ability to pay. Similarly, we do not agree that the court's authority to modify the terms and conditions of probation "for cause" prior to the end of the term of probation, WIS. STAT. § 973.09(3)(a), removes the court's obligation under § 973.20 to order an amount of restitution that the defendant will be able to pay during the sentence, when presented with evidence of the defendant's ability to pay. Section 973.09(3)(a) authorizes a court to reduce restitution if a defendant is not able to pay the amount ordered based on circumstances not contemplated at the time restitution was imposed; it is not a substitute for deciding at the time of sentencing the amount of restitution a defendant will be able to pay during his sentence, based on the information presented to the court.

¶ 27. We do not agree with the State that our decision in *Dugan*, 193 Wis. 2d 610, supports deferring a determination of the amount of restitution a defendant can pay when a defendant presents evidence of his or her ability to pay. In *Dugan*, the defendant did not object to the State's request for restitution in the amount of $40,000, did not assert he did not have the ability to pay that, and did not present evidence of ability to pay. *Id.* at 624–25. We therefore concluded he had waived the argument that the court erred in not considering his ability to pay. *Id.* In that context, our statement that "if in the future Dugan believes he is unable to meet his restitution obligation, he can bring a motion for modification of his sentence at that time"

918

meant only that there was a means to modify the restitution already established. *See id.* at 625. That statement does not mean that a court need not establish restitution in an amount a defendant can pay when presented with evidence of the defendant's ability to pay and instead may rely on the opportunity for later modification.

¶ 28. We are sympathetic with the difficulty of determining, while a defendant is serving a prison term, what his or her financial circumstances will be upon release from prison and during extended supervision and probation. However, the court is not expected to make this determination in a vacuum, since the defendant has the burden of presenting evidence on his or her ability to pay. WIS. STAT. § 973.20(14)(b). Where, as in this case, there is evidence of past earnings, earnings in prison and future child support obligations, the court has an evidentiary basis for deciding what it is reasonably probable that Asp will be able to pay for restitution during his sentence. We are also sympathetic with the court's concern that, for unanticipated reasons, a defendant may have a greater ability to pay in the future than the evidence shows now, and the victim will therefore be deprived of some restitution. If the statutes do not now allow for a victim to recover more in such a situation, an issue we do not address, it may be that the legislature will choose to provide for this. However, we are satisfied that § 973.20 as presently written does not authorize a court to defer consideration of the defendant's ability to pay when presented with that evidence, even if the purpose of deferral is to avoid the possibility that the defendant will have a greater ability to pay in the future than the court anticipated. Accordingly, we remand for the court

to determine what amount of restitution it is reasonably probable that Loutsch will be able to pay during the term of his sentence.

¶ 29. Finally, Loutsch contends that the trial court ordered that he pay a total of $5,249.97 to insurers of Asp and Loutsch's father-in-law without deciding that justice requires this. WISCONSIN STAT. § 973.20(5)(d) authorizes the trial court, "[i]f justice so requires," to order a defendant to "reimburse any insurer, surety or other person who has compensated a victim for a loss otherwise compensable under this section." We do not address the parties' debate on whether Loutsch waived this issue and whether the court addressed it. We are satisfied that this issue should be considered on remand when the court makes a determination of the reasonable amount of restitution Loutsch has the ability to pay during the term of his sentence.

*By the Court.*—Judgment and orders affirmed in part; reversed in part and cause remanded with directions.