NOT DESIGNATED FOR PUBLICATION

No. 117,335

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRIAN MONZON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JOHN J. KISNER JR., judge. Opinion filed March 30, 2018. Affirmed.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., MALONE and MCANANY, JJ.

PER CURIAM: Brian Monzon pled guilty to a residential burglary which involved Monzon and one of his codefendants breaking a window to gain entry into the house and damaging furnishings after gaining entry. The district court ultimately sentenced Monzon to 24 months' probation with an underlying prison term of 15 months based on a criminal history that included Monzon's prior juvenile adjudications. The court conditioned probation on Monzon paying restitution.

1

The State requested for restitution that Monzon be held jointly and severally liable for the homeowner's lost wages in the amount of $158.76, the homeowner's $1,000 insurance deductible, $100 for damage to a file cabinet, and $6,020.22 paid by the homeowner's insurer for the loss.

Monzon agreed to pay the homeowner's $1,000 insurance deductible but objected to being required to pay the $6,020.22 paid by the homeowner's insurer and $100 for the damaged file cabinet. He also objected to being required to pay $158.76 for the homeowner's lost wages incurred during the processing of the insurance claim. The court ordered Monzon to pay the $1,000 policy deductible, $100 for the file cabinet, $2,006.74 of the insurer's payment under the homeowner's policy, and $158.76 for the homeowner's lost wages.

Monzon appeals the order requiring him to pay restitution in the amount of $158.76 for the homeowner's lost wages. He also claims that his sentence is illegal.

With regard to the restitution order, Monzon claims that the homeowner did not experience any lost wages because he took vacation time and, therefore, was already compensated for his lost time.

We review this claim for any abuse of discretion by the sentencing court. *State v. Shank*, 304 Kan. 89, 93, 369 P.3d 322 (2016). A district court abuses its discretion if (1) no reasonable person would take the view adopted by the district court; (2) the decision is based on an error of law; or (3) the decision is based on an error of fact. The party asserting the district court abused its discretion bears the burden of showing such abuse. 304 Kan. at 92, 93-94.

K.S.A. 2017 Supp. 21-6607(c)(2) provides that "[t]he court shall order the defendant . . . to make reparation or restitution to the aggrieved party for the damage or

2

loss caused by the defendant's crime, in an amount and manner determined by the court and to the person specified by the court." "The measure of reparation or restitution to be ordered . . . is the amount that reimburses the victim for the actual loss suffered." *State v. Applegate*, 266 Kan. 1072, 1079, 976 P.2d 936 (1999). Actual losses may include loss of income. *State v. Beechum*, 251 Kan. 194, 203, 833 P.2d 988 (1992).

We find no Kansas case addressing this restitution issue. Other states addressing the issue have held that a loss of paid time off or vacation time is the loss of an economic benefit that is similar to lost wages and properly may be the subject of an order of restitution.

In *People v. Perez*, No. 15CA1352, 2017 WL 1404231, at *3 (Colo. App. 2017), the court held that "expenditure of vacation and sick leave is a loss of employee benefits comparable to a victim's loss wages." Likewise, in *In re K.F.*, 173 Cal. App. 4th 655, 666, 92 Cal. Rptr. 3d 784 (2009), the court found a victim's loss of sick leave was compensable under California's restitution statute because "by depleting his sick leave . . . the credits consumed would not be available [to the victim] to cover future illnesses or for whatever other beneficial purpose the employer might allow."

In *In re Welfare of M.R.H.*, 716 N.W.2d 349, 353 (Minn. Ct. App. 2006), the court considered Minnesota's restitution statute and concluded:  "Although accrued leave is not one of the losses specifically listed in the statute, earned but unused leave is a compensable asset, and its loss therefore may be recoverable by a victim-employee through restitution." Similarly, in *In re Ryan A.*, 202 Ariz. 19, 26, 39 P.3d 543 (Ariz. Ct. App. 2002), the court declined to "construe the term 'lost wages' [in the Arizona restitution statute] so narrowly as to preclude restitution for the loss of indirect employment benefits, such as annual leave or vacation time . . . . The loss of such benefits is a real economic loss tied to wages earned." In *State v. Loutsch*, 259 Wis. 2d 901, 913, 656 N.W.2d 781 (Wis. Ct. App. 2002), *overruled on other grounds by State v.*

3

*Fernandez*, 316 Wis. 2d 598, 764 N.W.2d 509 (2009), the court considered Wisconsin's restitution statute and found that sick leave is compensable.

While the Kansas restitution statute, K.S.A. 2017 Supp. 21-6607(c)(2), does not expressly list vacation time as a compensable loss for purposes of restitution, the statute is broad enough to encompass vacation time by covering "damage or loss caused by the defendant's crime" and "the actual loss suffered."

Here, the district court found that the homeowner was required to take four hours of vacation time in order to meet with the insurance adjuster on the claim caused by Monzon's criminal conduct. The loss of vacation time is an economic loss similar to lost wages, which our Supreme Court has determined to be a valid measurement of an actual loss for purposes of restitution. See *Beechum*, 251 Kan. at 203. The district court's restitution order was directed to restoring that portion of the homeowner's employment benefit which was lost on account of Monzon's criminal actions. The district court did not abuse its discretion in so ordering.

Next, Monzon asserts that his sentence is illegal because the sentencing court used his prior juvenile adjudications to increase his sentence without requiring a jury to find him guilty, in violation of his Sixth and Fourteenth Amendment rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

Whether a sentence is illegal is a question of law over which we have unlimited review. See *State v. Nguyen*, 304 Kan. 420, 422, 372 P.3d 1142 (2016). The legality of a sentence can be challenged at any time and may be considered for the first time on appeal. *State v. Dickey*, 301 Kan. 1018, 1034, 350 P.3d 1054 (2015).

In *State v. Hitt*, 273 Kan. 224, 236, 42 P.3d 732 (2002), our Supreme Court determined that the use of juvenile adjudications in calculating criminal history does not

4

violate a defendant's constitutional rights under *Apprendi*. We are duty bound to follow Supreme Court precedent absent a showing that the Supreme Court is departing from its previous holding. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). We see no indication that our Supreme Court is departing from *Hitt*. *Hitt* controls. The district court did not violate Monzon's constitutional rights by using his juvenile adjudications to increase his sentence.

Affirmed.