COUNTY OF EAU CLAIRE, Plaintiff-Respondent,†

v.

AFSCME LOCAL 2223, Defendant-Appellant,

WISCONSIN EMPLOYMENT RELATIONS COMMISSION,
Defendant.

Court of Appeals

*No.  94–1482.  Submitted on briefs November 21,
1994.—Decided December 20, 1994.*

(Also recorded in 526 N.W.2d 802.)

†Petition to review filed.

On behalf of defendant-appellant, the cause was submitted on the briefs of *Bruce F. Ehlke* of *Lawton & Cates, S.C.* of Madison.

On behalf of plaintiff-respondent, the cause was submitted on the brief of *Keith R. Zehms*, corporation counsel, of Eau Claire.

Before Cane, P.J., LaRocque and Myse, JJ.

299

LaROCQUE, J. AFSCME Local 2223, the County employees union and the exclusive bargaining agent for the employees in the offices of the Eau Claire County Clerk of Court and Register of Deeds, appeals a declaratory judgment exempting these employees from the terms of the collective bargaining agreement between the County and the union. The clerk and the register deputized virtually every employee in their respective offices. The circuit court decided that the employees were exempt from the contract negotiated pursuant to the Municipal Employment Relations Act (MERA), § 111.70, STATS., because the elected officials deputized the employees pursuant to express statutory authority.[1] The court concluded that our decision in *Crawford County v. WERC*, 177 Wis. 2d 66, 501 N.W.2d

---

[1] Section 59.38, STATS., provides:

Clerk of court; deputies; chief deputy; division chief deputies; calendar deputy clerk in certain counties. (1) Counties of less than 500,000 population. Every clerk of the circuit court shall appoint one or more deputies and the appointments shall be approved by the majority of circuit judges for the county, but shall be revocable by the clerk at pleasure, except in counties having a population of 500,000 or more. The appointments and revocations shall be in writing and filed in the clerk's office. The deputies shall aid the clerk in the discharge of the clerk's duties. In the absence of the clerk from the office or from the court they may perform all the clerk's duties; or in case of a vacancy by resignation, death, removal or other cause the deputy appointed shall perform all such duties until the vacancy is filled.

Section 59.50, STATS., provides:

Register of deeds; deputies. Every register of deeds shall appoint one or more deputies, who shall hold office at the register's pleasure. The appointment shall be in writing and filed and recorded in the register's office. The deputy or deputies shall aid the register in the performance of the register's duties under the register's direction, and in case of vacancy or the register's absence or inability to perform the duties of the register's office the deputy or

836 (Ct. App. 1993), controlled the outcome here. That case held that an irreconcilable conflict existed between the County's power to bargain collectively with the union on various subjects of employment and the power of the clerk of court and register of deeds to appoint and discharge deputies. *Id.* We distinguish *Crawford* on its facts because it apparently involved a union exclusion of only a single chief deputy in each office. We conclude that deputized employees, apart from the chief deputy, are exempt from MERA coverage only to the extent that they in fact function as managerial or supervisory employees, as that term has been defined by case law. We therefore reverse the judgment and remand for a factual determination as to which of the deputies so qualify.

## BACKGROUND

The County and the union stipulated to a detailed statement of facts consisting of some seventy-eight pages, attached exhibits included. What follows is a recitation of only those facts as are necessary to a resolution of this appeal. These two parties have been bound by a collective bargaining agreement, negotiated pursuant to § 111.70, STATS., since 1972, and the current agreement covers the employees in the offices of the clerk of court and the register of deeds. The contract includes a requirement that the employer discharge only for just cause, and a four-step employee grievance process ending with binding arbitration with a Wisconsin Employment Relations Commission (WERC) arbitrator. It also includes an employee posting procedure that controls hiring practices.

deputies shall perform the duties of register until the vacancy is filled or during the continuance of the absence or inability.

## A. Clerk of Court

The Eau Claire County clerk of circuit court's office is staffed by the elected clerk and a chief deputy clerk, which is a non-union position. The chief deputy is deputized by the clerk and, in the absence of the clerk, assumes the duties, responsibilities and authority of the office. The office also employs sixteen union employees, each of whom is necessary for the clerk to fulfill her duties. Although none of the union employees has the job title of deputy clerk, each of them was deputized by the clerk, ostensibly pursuant to § 59.38(1), STATS.

In addition to the elected clerk and the chief deputy, the "Position Description Review Log" allocates three fiscal clerks, three clerk I/II's, three terminal operators and seven judicial clerks. The written job descriptions for each of these positions state that none of them involves the exercise of supervision or direction of others. According to the same documents, all of these positions are supervised by the "Deputy Clerk of Courts or Clerk of Courts."

Shirley Ives was hired in 1989 by the clerk of court and signed and filed an oath of office as a deputy clerk of court at that time and after each biennial election. Her deputizations were not formally approved by the majority of the circuit judges of the county as contemplated by § 59.38(1), STATS.[2] Her deputization was on file with the Federal Passport Agency, which enabled her to process and sign passport applications. It was also on file at an unspecified office in Madison, which

---

[2] The union does not contend that the failure to obtain "formal" approval of the judges renders the process invalid, and we therefore accept as a stipulated fact the inference that the judges tacitly approved the appointments.

302

enabled her to authenticate and certify court records relating to vital statistics. Ives was directly supervised by the chief deputy clerk of court. Ives at the time of her discharge was working principally as a receptionist, and was fired in April 1993, allegedly for unsatisfactory work performance. The union president filed a grievance on Ives' behalf, alleging a termination without just cause. The County personnel committee denied the grievance, a petition for arbitration was filed with WERC and a hearing date was set before an arbitrator. The parties eventually agreed to indefinitely postpone the arbitration after the County filed this declaratory judgment action.

## B.  Register of Deeds

The Eau Claire County register of deeds office is staffed by the elected register and a chief deputy register, which is a non-union position, and four full-time union positions. All of the office employees are deputized by the register save one, who will be as soon as the register determines she has received sufficient training and experience. None of the union employees is titled deputy register, but each is responsible for performing the duties of the register in her absence, and each aids in the performance of her statutory duties. The deputizations were ostensibly made pursuant to § 59.50, STATS.

The position of correspondence clerk in the register's office became vacant, and the opening was posted pursuant to the collective bargaining agreement. A number of union employees signed the posting, evincing an interest in the job. The register appointed a part-time employee in her office to fill the vacancy, although two union employees who signed the posting

appeared to be qualified and had more seniority than the person appointed.

The union filed a grievance objecting on grounds that it violated the seniority rights of the bargaining agreement. The parties also agreed to hold this grievance in abeyance pending the outcome of this litigation.

The circuit court applied the holding in *Crawford* to resolve the dispute here in favor of the County. We have examined the appellate briefs and appendices in *Crawford*, now located in the archives of the state law library. We observe that the respective appointments by the clerk and the register in *Crawford* were limited to a single chief deputy in each office.

*Crawford* acknowledged that *Glendale Professional Policemen's Ass'n v. Glendale*, 83 Wis. 2d 90, 264 N.W.2d 594 (1978), pronounced the general rule: A collective bargaining agreement under § 111.70, STATS., must, where possible, be harmonized with other statutory provisions. Thus, as *Crawford* noted:

> In *Glendale*, the issue was whether a provision in a collective bargaining agreement between the city and its police officers which tied promotions to seniority was illegal in light of the provisions of the general city charter law giving the police chief the power to promote subordinates . . . . The supreme court was able to harmonize the contract provision and the chief's statutory powers by concluding that because the seniority provision applied only to situations where there was more than one qualified candidate for promotion, it did not require the chief to select an unqualified person who would be entitled to the position not by his or her qualifications, but only by seniority. According to the court, "[a] requirement that the chief promote the most senior qualified applicant merely restricts the discretion that would otherwise exist."

*Id.* at 72-73, 501 N.W.2d at 839 (quoting *Glendale*, 83 Wis. 2d at 102-03, 264 N.W.2d at 601 (citation omitted)).

*Crawford* distinguished *Glendale*, holding that application of the union contract to influence the decision of the clerk and the register in his or her appointment decision would produce "a result totally in conflict with the statutes," *Crawford*, 177 Wis. 2d at 79, 501 N.W.2d at 842, granting that appointment power. We limit that holding to its facts to avoid the evisceration of the legislative intent underlying MERA and §§ 59.38 and 59.50, STATS.

Read apart from MERA, the deputy appointment power of the clerk and the register is unfettered. As *Glendale* suggests, however, the union contract and related statutes should be harmonized wherever possible. MERA and the appointment statutes certainly relate to the same subject, the hiring and firing of County employees. While *Crawford* could not reconcile the appointment of a deputy clerk and deputy register at the pleasure of their superior, it does not follow that the number of appointments pursuant to this statutory power is unlimited. The size and function of the particular office will ultimately determine the scope of the power.

We remand to the circuit court to determine which, if any, of the deputies in this case fall within the definition approved by our supreme court in *Milwaukee v. WERC*, 71 Wis. 2d 709, 715-16, 239 N.W.2d 63, 67 (1976):

> Managerial employes, as well as supervisors, have been excluded from MERA coverage on the basis that their relationship to management imbues them with interests significantly at variance with those of other employes. In that

305

managerial employes participate in the formulation, determination and implementation of management policy, they are unique from their co-workers . . . . In addition, managerial status may be related to a position's effective authority to commit the Employer's resources. Managerial employees do not necessarily possess confidential information relating to labor relations or supervisory authority over subordinate employes.

■

We think MERA and the appointment authority can be harmonized so that the clerk and the register retain the power to hire and fire deputies at will, but only to the extent that the persons so appointed fall within the classification of "managerial employees" as that term has been defined by case law. Where the facts demonstrate that the appointment is not merely a subterfuge to avoid the union contract, and the employee's functions actually coincide with the well-established definition of a managerial employee, the appointment of more than one exempt deputy is in harmony with MERA and the discretion granted an elected official to manage his or her office.

We decline to hold as a matter of law that none of the deputies meets this definition of a managerial employee. While the job descriptions for the clerk's employees do not suggest that any of them have authority to "commit the County's resources," or that they participate in the formulation, determination and implementation of management policy, the recitation of "typical duties" is "illustrative only." Further, the job descriptions for employees in the register's office are not included.

We therefore remand to the trial court to determine which if any of the employees are properly exempt from the union contract as deputies based upon the preceding definition. The court may exercise its discretion to determine whether and to what extent further evidence is necessary upon which to resolve any dispute. With the court's approval, the parties may stipulate to submit the dispute to WERC arbitration.

*By the Court.*—Judgment reversed and cause remanded with directions.