IN RE the MARRIAGE OF:

Debra J. WALL, Petitioner,

STATE of Wisconsin, Appellant,

v.

Michael K. WALL, Respondent-Respondent.

Court of Appeals

*No. 97–0826. Submitted on briefs November 10, 1997.—Decided December 10, 1997.*

(Also reported in 573 N.W.2d 862.)

On behalf of the appellant, the cause was submitted on the briefs of *Jon F. Lehman* of *Racine County Child Support Department*.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Robert J. Grady* of *Fetek & Grady, S.C.* of Racine.

Before Snyder, P.J., Brown and Nettesheim, JJ.

BROWN, J.    In both 1993 and 1994, Michael K. Wall's employer rewarded him with vacations to Mexico. The State contends that under WIS. ADM. CODE § HSS 80.02(13)(a), which defines gross income under the child support guidelines, the cash value of these two trips should be included in Michael's gross income and be subject to the percentage standards for child support purposes. This issue before us is whether the circuit court erroneously exercised its discretion when it deviated from the child support guidelines pursuant to § 767.25(1m), STATS., after finding that it would be unfair to include the trips to Mexico in Michael's gross income because they could not be readily converted to cash, traded or sold. Because we conclude that the

vacations did not enhance Michael's net worth and therefore increase his ability to make child support payments, we affirm.

Michael and Debra J. Wall were divorced in 1992. Debra was awarded primary physical placement of the two minor children from the marriage, and Michael was ordered to pay 25% of his gross income as child support, which his employer deducted from his paycheck.

In 1993 and again in 1994, Michael's employer rewarded him for his job performance with a trip to Mexico. The 1993 award was a four-day trip to Cancun, Mexico, that included round-trip tickets for two from Chicago to Cancun, lodging and some meals. The 1994 award was a five-day trip to Acapulco, Mexico, that also included round-trip tickets for two, lodging and some meals. Michael's employer included the cash value of both trips in Michael's wages; however, the company did not withhold any money for child support from these additional wages.

In 1996, the State, through the Racine County Child Support Agency, brought an arrearage hearing before the circuit court. It sought to collect as child support arrearages 25% of the value of the trips added to Michael's income in 1993 and 1994. At the hearing, the court found that the two trips fell within the definition of gross income under WIS. ADM. CODE § HSS 80.02(13)(a).[1] However, the court found that it would be unfair to include the trips in Michael's gross income because they could not be readily converted to cash,

---

[1] WISCONSIN ADM. CODE § HSS 80.02(13)(a) defines gross income to include "[a]ll income considered federal gross income under 26 CFR 1.61–1." Gross income as defined in 26 C.F.R. § 1.61–1 (West 1997) means "all income from whatever source derived, unless excluded by law."

traded or sold, and so it exercised its discretion under § 767.25(1m), STATS., and excluded the value of the trips from the percentage standards. The State appeals this order.

■

The determination of appropriate child support is committed to the sound discretion of the circuit court. *See Weidner v. W.G.N.,* 131 Wis. 2d 301, 315, 388 N.W.2d 615, 622 (1986). Whether the trial court properly exercised its discretion is a question of law which we review de novo. *See Seep v. State Personnel Comm'n,* 140 Wis. 2d 32, 38, 409 N.W.2d 142, 144 (Ct. App. 1987).

Both parties agree that the trips to Mexico fall within the definition of gross income under WIS. ADM. CODE § HSS 80.02(13)(a). Thus, the sole issue before us is whether the circuit court erroneously exercised its discretion when it deviated from the percentage standards under § 767.25(1m), STATS.

The State contends that when a court decides whether an asset falls within the definition of gross income under WIS. ADM. CODE § HSS 80.02(13)(a), "fairness" determinations, such as whether the asset is readily convertible to cash or capable of being traded or sold, are outside of the scope of the court's discretionary power under § 767.25(1m), STATS. Essentially, the State claims that once a court determines that a form of income falls within the guidelines' definition of gross income, it has no choice but to include it in the payor's gross income under the percentage standards. We disagree.

■

Courts are required to determine the appropriate award of child support by application of the percentage standards mandated under § 49.22(9), STATS., as

599

established in WIS. ADM. CODE § HSS 80.04(2). *See* § 767.25(1j), STATS. "Absent a showing of unfairness, courts must determine a parent's child support obligation by using the percentage standard established by the Department of Health and Social Services . . . ." *Grohmann v. Grohmann,* 189 Wis. 2d 532, 536, 525 N.W.2d 261, 262 (1995). Courts may deviate from the percentage standards only upon a finding by the greater weight of the credible evidence that applying the percentage standards would be unfair to the child or either party. *See* § 767.25(1m).

Section 767.25(1m)(i), STATS., permits a court to consider "[*a*]*ny other factors* which the court in each case determines are relevant" to its decision on whether to deviate from the percentage standards. (Emphasis added.) Therefore, when determining fairness, a court is free to examine *any* factor it deems relevant. Clearly, a relevant factor when determining fairness would be whether to include in gross income any noncash income that, although taxable under the federal income tax code, does not generate additional cash or assets and therefore does not enhance the payor's financial means to make child support payments. Thus, under § 767.25(1m)(i), the court may deviate from the guidelines if by the greater weight of the credible evidence it would be unfair to include the noncash income in the payor's gross income as defined in WIS. ADM. CODE § HSS 80.02(13)(a).

The circuit court justified its decision to deviate under § 767.25(1m)(i), STATS., from the percentage standards for the following reason:

> [The trip] has cash value in the sense that the government assesses a cash value to it in which [Michael] has to expend monies in income taxes on

it but this is a trip that he could not trade, he couldn't sell, he couldn't take it in lieu of cash. In fact he had to take it or lose it and . . . I don't believe that . . . deviating . . . is going to cause companies to change their bonus structure nor does it stop the court from assessing child support on bonuses. If this were a television, a car, a stock certificate, clothing, anything that had value which could be traded on the market across the board . . . then clearly Mr. Wall in this case would be in a different posture than he is right now. . . . I just don't think under the unique facts in this case . . . it's appropriate to apply the percentage guidelines. . . .

We agree. It would be unfair to include in Michael's gross income the value of the two trips to Mexico because they did not generate any cash or assets that would enhance Michael's net worth and therefore his financial means to make additional child support payments. For example, unlike other types of assets, such as a television, car or stock certificate, the trips could not be assigned or sold to a third party; they had no marketable value. Also, Michael did not have the option of receiving the cash value of the trips; Michael's employer gave him one option: take the trips to Mexico or lose the trips altogether.

The State, however, contends that an inability to readily convert the trips into cash or the fact that they cannot be sold or transferred to a third party does not by itself support the court's decision to deviate. It argues that we should follow other jurisdictions whose courts have included in a payor's gross income forms of noncash income similar to the trips to Mexico in the present case.

The State cites *Malner v. Malner,* 401 N.W.2d 892 (Mich. Ct. App. 1986), and *Robbins v. Robbins,* 536 N.W.2d 77 (Neb. Ct. App. 1995), to support its

argument. In *Malner,* the court included the value of food and fuel vouchers in a noncustodial parent's gross income for the purpose of calculating child support payments. *See Malner,* 401 N.W.2d at 894. Similarly, the *Robbins* court included the value of an employee's regular bonuses received in the form of food and beverages when it calculated the employee's gross income under the percentage standards. *See Robbins,* 536 N.W.2d at 83.

But the vouchers in *Malner* and the food in *Robbins* are assets similar to a car, stock certificate or television, and therefore those cases are readily distinguishable and provide no support for the State's argument. In both *Malner* and *Robbins,* the noncash income—food or vouchers for food and fuel—represented assets that increased the financial wealth of the payors. Similar to a car or stock certificate, both the vouchers and the food increased the net worth of the payors and therefore their ability to make additional child support payments. This is because it is axiomatic that people have to eat; it is a necessity. Likewise, fuel is most often a necessity. Normally, a person has to pay for food and fuel. But if a person is given food or vouchers for food and fuel, it frees up money that would otherwise have to be earmarked for food and fuel. Thus, the money saved by not having to buy food or fuel is available for other means and that amount becomes a commensurate increase in net worth. As such, the money saved by not having to purchase food and fuel is available for child support.

Conversely, a trip to Mexico is not a necessity. Wall does not *have to* take a trip to Mexico. Thus, by taking the trip at no expense to him, he does not free up

602

money that he would otherwise have to expend for a vacation trip. His net worth is not increased one iota and there is nothing extra that is available for child support. Therefore, we hold that because under the great weight of the credible evidence it would be unfair to include the value of the two trips in Michael's gross income, the court properly exercised its discretion under § 767.25(1m)(i), STATS., to deviate from the child support guidelines.

Finally, the State contends that without hearing the evidence of Debra's circumstances or the circumstances of the two minor children, the court lacked the necessary facts to make its fairness determination, resulting "in an incomplete analysis [by the court] for purposes of deviating from the presumptive percentage standard and a misapplication of the law." Apparently, the State contends that arrearage hearings are usually pro forma affairs and fairness determinations are not germane to these hearings. The State seems to suggest that if the court was going to seriously consider deviating from the percentage standards, the court should not have acted without first hearing from Debra. However, the circuit court clearly informed both parties of its view that the primary issue was whether it should exercise its discretion under § 767.25(1m)(i), STATS. If the State believed it was relevant for the court to hear evidence of either Debra's or the children's circumstances in order to make its fairness determination, it had the responsibility to place this evidence before the circuit court. For its own reasons, it failed to do so. The State has the responsibility to prepare its case just like anybody else. Therefore, we

dismiss the State's argument without further comment.

*By the Court.*—Order affirmed.