In re the Marriage of:

Lynn E. Steiner, Petitioner-Respondent,

v.

Van F. Steiner, Respondent-Appellant.

Court of Appeals

*No. 03–0931. Submitted on briefs November 7, 2003.—Decided August 19, 2004.*

2004 WI App 169

(Also reported in 687 N.W.2d 740.)

■■■■■■■■■■■■■■■■■■■

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Mark F. Borns* of *Relles, Borns & Long, LLP*, Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Daphne Webb* and *J. Alberto Quiroga* of *Stafford Rosenbaum LLP*, Madison.

Before Deininger, P.J., Dykman and Lundsten, JJ.

¶ 1. LUNDSTEN, J. Van Steiner appeals a divorce judgment of the circuit court. Van challenges the property division and maintenance provisions of that judgment. He argues that the court erred when it treated his sick leave account as a consideration under Wis. Stat. § 767.255(3) (2001-02)[1] when awarding Lynn Steiner more than half of the divisible property. Van also argues that the court erred when it denied his request for maintenance. We disagree with Van and affirm the circuit court.

## *Background*

¶ 2. Van and Lynn were married on April 11, 1964. They were divorced on January 6, 2003, when Van was sixty-one years old and retired and Lynn was fifty-nine years old and working thirty hours per week as a nurse.

¶ 3. After a contested divorce hearing, the circuit court determined that an unequal distribution of Lynn and Van's divisible property was warranted. The court awarded Lynn property valued at approximately $107,198, and Van property valued at approximately

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

$30,909.[2] The court deviated from the statutory presumption of equal property division after considering Van's non-divisible property, including a sick leave account valued at approximately $89,000. In its decision, the court noted that although Van's sick leave account was not property subject to division, it could be considered under WIS. STAT. § 767.255(3) as background information.

¶ 4. The circuit court also denied Van's request that Lynn pay him maintenance and Van's alternative request that maintenance be held open. The court denied these requests based partly on evidence that Van could support himself with income from social security, his Wisconsin retirement, and his inheritance and by earning about $15,000 per year working part time.

### Discussion

#### Sick Leave Account

¶ 5. Van contends that the circuit court erred when it relied on the value of his sick leave account to deviate from an equal property division. He contends that consideration of his sick leave account runs afoul of our decision in *Preiss v. Preiss*, 2000 WI App 185, 238 Wis. 2d 368, 617 N.W.2d 514. We disagree, and begin our discussion by summarizing *Preiss*.[3]

---

[2] These numbers, taken from Van's brief, do not appear to coincide with the equalizing payment the court discusses in its final judgment. Still, the record is unclear in this respect, and Lynn does not dispute these figures. In any event, different numbers would not affect our conclusions in this opinion.

[3] Van also argues that the circuit court failed to adequately explain its decision to deviate from an equal property division.

¶ 6. In *Preiss*, we reviewed a decision to place a value on a party's sick leave account and treat the account as divisible property. It is undisputed that Van's sick leave account is the same type of government sick leave account that was at issue in *Preiss*. In both, accumulated sick leave account hours are valued at the employee's hourly rate of pay at the time of retirement and then converted to credits that may only be used to pay the employee's health insurance premiums. *Id.*, ¶ 13. The account cannot be given away or transferred. *Id.*, ¶ 14.

¶ 7. We concluded in *Preiss* that the circuit court erroneously treated the sick leave account as divisible property. We explained:

He disputes several factors listed by the circuit court in support of unequal division. However, our review of the record reveals that the court plainly explained that it was deviating from an equal property division because of Van's sick leave account, which was valued at $89,000. Van admits as much when he says in his brief: "While acknowledging that the sick leave account is not an asset subject to division, the trial court nevertheless awarded Lynn $76,289 more of [the divisible assets]. Clearly, this decision was based upon the [court's] perceived value of the sick leave account." Van then points to comments of the circuit court which, we agree, support his assertion that the sick leave account was the key issue. We conclude that if consideration of Van's sick leave account was proper, it cannot be seriously argued that the circuit court in this case misused its discretion. Conversely, if such consideration was improper, the court misused its discretion and remand is necessary on the topic. Accordingly, we only address the propriety of the circuit court's reliance on the sick leave account. We also note that Van does not argue that the court could not consider his non-divisible inherited assets, valued at approximately $175,000. Because we conclude that consideration of the sick leave account was proper, we need not address Lynn's alternative argument that Van's non-divisible inherited assets alone justify the unequal property division.

[The husband] cannot convey his interest in the account; he cannot gift it; he cannot transfer it. Because the account has no cash value and cannot be sold or transferred, it also does not have a fair market value. "Property to be divided at divorce is to be valued at its fair market value. Fair market value assumes sale by one who desires but is not obligated to sell and purchase by one willing but not obligated to buy." A transaction that would determine the property's fair market value cannot be made. If property has no fair market value, the court cannot place an independent value upon it, and it should thus not be included as an asset in the marital estate.

The account does indeed have an intrinsic value. It has value to [the husband], but this value is not accessible to anyone else.

*Id.*, ¶¶ 14–15 (citation omitted).

¶ 8. Van asserts that if a sick leave account may not be directly treated as divisible property, it may not be considered for purposes of property division. He reasons that because *Preiss* prohibits sick leave accounts from coming in the front door as divisible property, the circuit court should not be permitted to bring his account in the back door as a "consideration" and achieve the same result. Lynn responds that *Preiss* only prohibits treating sick leave accounts as divisible property and that, under WIS. STAT. § 767.255(3)(j), a sick leave account is exactly the type of asset courts are permitted to consider as background information when deciding whether to deviate from an equal property division. We think Lynn has the better argument.[4]

---

[4] As an alternative argument, Van contends the circuit court should not have considered his sick leave account because Lynn's current job provides health care coverage, because Lynn will only start paying a substantial amount toward health

¶ 9. "The division of a marital estate is governed by WIS. STAT. § 767.255, which creates a presumption that the property will be divided equally." *Preiss*, 238 Wis. 2d 368, ¶ 10. WISCONSIN STAT. § 767.255(3) provides, in relevant part:

> The court shall presume that all property not described in sub. (2)(a) is to be divided equally between the parties, but may alter this distribution without regard to marital misconduct after considering all of the following:
>
> . . . .
>
> (j) Other economic circumstances of each party, including pension benefits, vested or unvested, and future interests.

We agree with Lynn that Van's sick leave account is an "other economic circumstance" akin to unvested pension benefits. Neither is owned and, thus, neither can be transferred or sold. Still, both have readily apparent value, even though that value is contingent on future events. In *Preiss*, we acknowledged that sick leave accounts have value: "The account does indeed have

insurance when she retires, and because Lynn has no current plan to retire. It follows, Van contends, that there is no basis for a finding that Van has an asset with significant value as compared with Lynn's situation. We are not persuaded. Lynn is nearly as old as Van. Van retired a few years before trial. Lynn was never asked when she expected to retire. It would have been reasonable for the circuit court to assume that Lynn was near retirement and that she would soon have to start paying for health care insurance. In any event, Van makes this argument for the first time on appeal and, therefore, has waived the issue. *See Gruber v. Village of North Fond du Lac*, 2003 WI App 217, ¶ 27, 267 Wis. 2d 368, 671 N.W.2d 692.

an intrinsic value. It has value to [the husband], but this value is not accessible to anyone else." *Preiss*, 238 Wis. 2d 368, ¶ 15.

¶ 10. Contrary to Van's argument, we did not hold in *Preiss* that a sick leave account has no identifiable value. We more specifically held that it does not have a "fair market" value as that term was explained in *Sommerfield v. Sommerfield*, 154 Wis. 2d 840, 853, 454 N.W.2d 55 (Ct. App. 1990). *Preiss*, 238 Wis. 2d 368, ¶ 14. To repeat, we acknowledged in *Preiss* that a sick leave account does have value. *Id.*, ¶ 15. In fact, when we went on to suggest that the value of a sick leave account may be considered if the topic is maintenance or child support, we implicitly said that such accounts have an identifiable value. We stated: "If maintenance or child support were at issue, then the fact that [one party] receives his health insurance premiums through the sick leave account would likely be considered in determining his living expenses and his ability to pay maintenance or child support." *Id.*, ¶ 16. If an asset can be valued with sufficient accuracy for purposes of determining appropriate maintenance and child support, we discern no reason why it cannot be a consideration under Wis. Stat. § 767.255(3)(j) for property division purposes.

¶ 11. We pause here to briefly compare *Preiss* with *Chen v. Chen*, 142 Wis. 2d 7, 416 N.W.2d 661 (Ct. App. 1987), and to point out that *Chen* supports our decision. In *Preiss*, we held that sick leave accounts are non-divisible property because they cannot be sold or transferred and, therefore, have no "fair market value." *Preiss*, 238 Wis. 2d 368, ¶ 14. In *Chen*, we concluded that unvested stock options—options that are "unassignable and unsalable" with no currently determinable value—may be treated as divisible property. *Chen*, 142

Wis. 2d at 10–12. We stated in *Chen*: "The mere fact that the interest in the asset is contingent does not mean that it may be ignored." *Id.* at 12. Thus, the types of assets at issue in both *Preiss* and *Chen* appear to share similar characteristics when viewed at the time of the property division decision. Still, these two types of assets do have different characteristics and it may be possible to reconcile *Preiss* and *Chen*. That specific question is not before us.

¶ 12. We mention *Chen* here because its reasoning affirmatively supports using an asset like a sick leave account as a consideration under WIS. STAT. § 767.255(3). Both sick leave accounts and unvested stock options have uncertain value because their value is contingent on future events. If unvested stock options may be treated as divisible property, courts should be permitted, at a minimum, to use sick leave accounts as a background consideration for purposes of determining an equitable property division.

¶ 13. We affirm the circuit court's consideration of Van's sick leave account and, therefore, also affirm the circuit court's property division award.[5]

*Maintenance*

¶ 14. The circuit court declined to order maintenance or to hold open the topic, explaining that its decision was "[b]ased upon projections [that] future income of the parties will be relatively equal varying with their hours of employment." In essence, the court

---

[5] Because we conclude that consideration of Van's sick leave account may be considered under WIS. STAT. § 767.255(3)(j), we need not address Lynn's assertion that the account may also be considered under § 767.255(3)(c) and (m).

found that both Van and Lynn were employable and each could attain approximately the same total income if they both chose to continue working. The court provided the following reasons for denying Van maintenance:

> (a) [Van] is 61 years of age, has an associate degree in electronics, and worked in various capacities for the University in radio electronics, for the most part with public radio. He is now retired and self-employed in his area of specialty.

> (b) The court finds the evidence insufficient to make a determination in support of [Van's] claim to be disabled from a motorcycle accident. There was no expert medical testimony or documents to substantiate such claim.

> (c) Two vocational specialists testified for the respective parties and both opined that at a minimum [Van] could work part time.

> (d) The records support [Van] earning between $20 and $40 per hour when working in his area.

> (e) In addition, [Van] is eligible for Social Security on his next birthday, has his Wisconsin Retirement (one-half thereof), and has his inheritance which, if properly managed, will produce additional income.

> (f) The court also took into consideration that when [Van] draws Social Security, the amount of income he can earn monthly without affecting his benefit is limited to $970 per month until the age of 65.

> (g) The court finds [Van] able to support himself.

¶ 15. Van challenges the denial of maintenance. He begins his argument by reciting some of the trial evidence regarding his ability to find employment. Van

acknowledges that one expert testified that Van could earn $10,000 to $15,000 per year, and that another expert believed Van could find "part-time" work at $20 to $22 per hour. Van then asserts that it is difficult to know how the circuit court arrived at the conclusion that the future incomes of Van and Lynn would be relatively equal. Van complains that the court did not make a finding as to when Van would find a job or for how long he would be employed.

¶ 16. We are not sure just what Van is arguing. If he is arguing that the record does not support factual findings that he is able to earn about $15,000 per year working part time and that he is able to do so for approximately the same length of time Lynn is able to work, he is wrong.[6] Van retired in March of 2002, at age sixty. The divorce trial was held in January of 2003. At that time, Van was sixty-one and Lynn was fifty-nine. Lynn, a nurse, had a gross monthly income of $3,075, working thirty hours per week. Van had worked in a temporary part-time position as recently as two months prior to trial at a rate of $40 per hour. That part-time job lasted about six months. A reasonable inference from the evidence is that Van voluntarily left that job when he decided not to pursue continued employment when the employer reduced the hourly rate to $19. Expert witness Kevin Schutz testified that Van could "most probably" secure part-time work, and also "probably" full-time work, at $20 to $22 per hour. Schutz pointed to a specific job opening to support that opin-

---

[6] *See Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643–44, 340 N.W.2d 575 (Ct. App. 1983) (a finding is not clearly erroneous merely because there is evidence in the record to support a contrary finding; evidence supporting a contrary finding must constitute the great weight and clear preponderance of the evidence).

ion. Lynn testified that Van had always been able to find consulting work in the past. Lynn testified that, at Van's retirement party, she was told Van could return to work at the University as a limited-term employee. This summary of trial evidence shows that the record easily supports a factual finding that Van could find work that would produce approximately $15,000 a year in income. Since Van and Lynn are just two years apart in age, it is reasonable to infer that they both could work for approximately the same number of years into the future.

¶ 17. If Van is arguing that his income will not be "relatively equal" to Lynn's even if he makes about $15,000 per year, he does not develop that argument. At any rate, this argument is amply rebutted in Lynn's responsive brief. Lynn explains that an accountant testified and gave detailed testimony factoring in other income sources and what might happen at various points in time in the near future when Van and Lynn become eligible for other benefits such as social security. Taking these other factors into account, Lynn shows how the testimony supports a finding that Van's income will be relatively equal to Lynn's so long as Van pursues part-time work. Van does not respond in his reply brief to Lynn's analysis, and we deem this omission a concession. *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (arguments not refuted may be deemed conceded).

¶ 18. Finally, if Van is simply arguing that the circuit court failed to adequately explain its decision, Van's argument is incomplete. Nowhere in his brief does he attempt to demonstrate that the full record fails to support the court's maintenance decision. It is not enough for a challenging party to assert or even to

demonstrate that a circuit court has failed to adequately *explain* a maintenance decision. "When the circuit court does not explain its reason for a discretionary decision, we may search the record to determine whether it supports [the] circuit court's decision." *Finley v. Finley*, 2002 WI App 144, ¶ 19, 256 Wis. 2d 508, 648 N.W.2d 536. Because Van has not attempted to show that the record does not support the circuit court's decision, we need address this topic no further.

¶ 19. Accordingly, we conclude that Van has provided no reason to reverse the circuit court with respect to maintenance.

*By the Court.*—Judgment affirmed.

¶ 20. DYKMAN, J. (*dissenting*). The supreme court's decision in *Cook v. Cook*, 208 Wis. 2d 166, 560 N.W.2d 246 (1997), has presented occasional dilemmas for some court of appeals panels. *Cook* held that the court of appeals lacked the power to overrule, modify, or withdraw language from its published opinions. *Id.* at 189–90.[1] Faced with this inability to modify its published opinions, panels sometimes distinguished a problematic case on exceedingly fine points, or on assumed facts.

¶ 21. An example of this is *LaCount v. Salkowski*, 2002 WI App 287, 258 Wis. 2d 635, 654 N.W.2d 295. In *LaCount*, the court distinguished *Beerbohm v. State Farm Mutual Insurance Co.*, 2000 WI App 105, 235 Wis. 2d 182, 612 N.W.2d 338. The court said:

> Contrary to what Langer and certain legal digests say about *Beerbohm, there is no statement by the court*

[1] The power of a court to hear and decide a particular case or controversy is described as its subject matter jurisdiction. *In Interest of A.E.H.*, 161 Wis. 2d 277, 297, 468 N.W.2d 190 (1991).

*that the parents were divorced,* only that they were living apart. Absent some indication the parents had anything but the natural parental custodial relationship to their child, we decline to apply *Beerbohm* to this case, and we limit *Beerbohm's* application of WIS. STAT. § 343.15(2)(b) to its facts.

*LaCount,* 258 Wis. 2d 635, ¶ 15.

¶ 22. But the parents to whom the court referred in *Beerbohm were* divorced. The indication of that is found in the state law library's copy of the *Beerbohm* briefs and appendices and contains the following from the appellant's brief: "Matthew Jordan's parents are divorced. His father and mother share joint custody." Appellant's brief at 6; *Beerbohm,* 235 Wis. 2d 182. The respondent agreed, referring to Matthew's mother as his father's ex-wife. Respondent's brief at 6; *Beerbohm,* 235 Wis. 2d 182.

¶ 23. We have previously examined briefs and appendices of published decisions to determine facts of which we were uncertain. *See County of Eau Claire v. AFSCME Local 2223,* 190 Wis. 2d 298, 304, 526 N.W.2d 802 (Ct. App. 1994). Without the factual distinction we have described, shown now to be false, *Beerbohm* and *LaCount* are indistinguishable.[2]

---

[2] The court of appeals has solved this problem, in part, by holding that if a conflict exists between two published court of appeals cases, the first in time governs because *Cook v. Cook,* 208 Wis. 2d 166, 560 N.W.2d 246 (1997), holds that we do not have the power to overrule or modify our prior published opinions. *See State v. Bolden,* 2003 WI App 155, ¶¶ 9–11, 265 Wis. 2d 853, 667 N.W.2d 364 (holding that a court of appeals' subsequent published decision cannot overrule or modify a prior published decision). The result is that the *LaCount v. Salkowski,* 2002 WI App 287, 258 Wis. 2d 635, 654 N.W.2d 295,

¶ 24. A similar sort of problem infects the majority's conclusion here. In both *Preiss v. Preiss*, 2000 WI App 185, 238 Wis. 2d 368, 617 N.W.2d 514, and here, the item in dispute was a State of Wisconsin sick leave account. There are no factual differences between the sick leave accounts in the two cases. One would reasonably conclude that the two accounts would be treated equally, considering the edict of *Cook*.

¶ 25. In *Preiss*, we held:

> We determine that Alfred's sick leave account was erroneously considered an asset of the marital estate. Alfred cannot convey his interest in the account; he cannot gift it; he cannot transfer it. Because the account has no cash value and cannot be sold or transferred, it also does not have a fair market value .... A transaction that would determine the property's fair market value cannot be made. If property has no fair market value, the court cannot place an independent value upon it, and it should thus not be included as an asset in the marital estate.

> The account does indeed have an intrinsic value. It has value to Alfred, but this value is not accessible to anyone else.

*Preiss*, 238 Wis. 2d 368, ¶¶ 14–15.

¶ 26. *Preiss* also considered *Wall v. Wall*, 215 Wis. 2d 595, 573 N.W.2d 862 (Ct. App. 1997). *Wall* concluded that an employer's gift of two vacations should not be considered income for purposes of child support. *Id.*

¶ 27. How does the majority avoid the holding in *Preiss*? First, by noting that *Preiss* concluded that a sick leave account does have value. That, of course, is

court lacked power to overrule *Beerbohm v. State Farm Mutual Insurance Co.*, 2000 WI App 105, 235 Wis. 2d 182, 612 N.W.2d 338.

true. *Preiss* holds that a sick leave account has an intrinsic value. But the fact that a sick leave account has an intrinsic value is irrelevant—*Preiss* reversed a trial court's valuation of a sick leave account even though the account had an intrinsic value.

¶ 28. The majority finds it relevant that *Preiss* also noted that a sick leave account could be considered in determining ability to pay maintenance or child support. Another truism; but so far, there is no difference between *Preiss* and the case we decide today. This is not a maintenance or child support case, but a property division case.[3] So was *Preiss*. There is no reason why child support, maintenance, and property division must be treated alike or differently. The fact remains that whether it is a good or bad idea to treat them the same or differently, *Preiss* treats them differently, and *Cook* does not permit the majority to "overrule, modify or withdraw language from a published opinion of the court of appeals." *Cook*, 208 Wis. 2d at 189–90. To say that the case we decide today does not modify *Preiss* because *Preiss* acknowledges that a sick leave account has intrinsic value is not even a distinction without a difference. It is no distinction at all.

¶ 29. "If an asset can be valued with sufficient accuracy for purposes of determining appropriate maintenance and child support, we discern no reason why it cannot be a consideration under WIS. STAT. § 767.255(3)(j) for property division purposes." Majority at ¶ 10. A more accurate way to put this would be: "We therefore overrule the conclusion in *Preiss*

---

[3] I recognize that another part of the majority opinion, with which I agree, pertains to maintenance. This dissent is only to the majority's treatment of the parties' property division.

that sick leave accounts cannot be valued with sufficient accuracy to permit them to be valued for property division purposes."

¶ 30. Finally, the majority compares the facts in *Chen v. Chen*, 142 Wis. 2d 7, 416 N.W.2d 661 (Ct. App. 1987), with the facts here, and asserts that if we concluded in *Chen* that unvested and unsalable stock options are divisible property, sick leave accounts should be treated similarly. That is an argument a party might make in a brief, or a factor we might use in a certification to the supreme court. But the only significance *Chen* has here is that it was not a sick leave account case and it was not followed by analogy in *Preiss*. The argument that *Preiss* should have followed *Chen* by analogy is just another way of saying "We prefer to analogize from a similar situation in *Chen*, and therefore overrule our ruling in *Preiss*."

¶ 31. There is no principled way to evade the supreme court's ruling in *Cook* that we are not to overrule or modify our prior published cases. Trial courts and the bar have been following *Preiss*, and using it to structure their stipulations and settlements. The majority's opinion will cause consternation for some, and provoke Wɪs. Sᴛᴀᴛ. § 806.07 (2001–02) motions from others. *Cook* provides the appropriate answer to the majority's dislike of *Preiss*:

> The court of appeals, however, is not powerless if it concludes that a prior decision of the court of appeals or the supreme court is erroneous. It may signal its disfavor to litigants, lawyers and this court by certifying the appeal to this court, explaining that it believes a prior case was wrongly decided. Alternatively, the court of appeals may decide the appeal, adhering to a prior case but stating its belief that the prior case was wrongly decided.

*Cook*, 208 Wis. 2d at 190.

¶ 32. Either way is acceptable to me. I would either reverse the trial court's division of Van's sick leave account and note that *Preiss*, *Wall*, and *Chen* might be reviewed by the supreme court, or I would certify the issue to the supreme court. I would not overrule *Preiss* by pretending to distinguish it. For these reasons, I respectfully dissent.