**COURT OF APPEALS
DECISION
DATED AND FILED**

**September 20, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2023AP163**
**2023AP164**

Cir. Ct. Nos. **2021JC80**
**2021JC81**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT II**

No. 2023AP163

IN THE INTEREST OF J.B., A PERSON UNDER THE AGE OF 17:

MANITOWOC COUNTY HUMAN SERVICES DEPARTMENT,

PETITIONER-RESPONDENT,

V.

M.B.,

RESPONDENT-APPELLANT.

No. 2023AP164

IN THE INTEREST OF J.B., A PERSON UNDER THE AGE OF 17:

MANITOWOC COUNTY HUMAN SERVICES DEPARTMENT,

PETITIONER-RESPONDENT,

V.

**M.B.,**

    **RESPONDENT-APPELLANT.**

_____

      APPEALS from orders of the circuit court for Manitowoc County: MARK ROHRER, Judge. *Affirmed.*

      ¶1    GROGAN, J.[1]  M.B., the father of twin thirteen-year-old boys J.B. and J.B. (hereinafter Jason and Jackson), appeals dispositional orders entered as to each child that identify multiple conditions of return.[2]  On appeal, M.B. argues that the circuit court erred when it included a requirement that he comply with the recommendations set forth in a Minnesota psychosexual evaluation/assessment as one of those conditions.[3]  He also asserts that the circuit court erred by including him on the final disposition orders because he "has never abused or neglected his

_____

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] M.B. filed these appeals pro se. Although he failed to file timely notices of his intent to pursue postdisposition relief from the December 19, 2022 orders in these cases, this court, on its own motion, construed the timely filed notices of appeal as an intent to pursue postdisposition relief in each case. In the same May 15, 2023 order, this court, again on its own motion, also consolidated the two cases for purposes of appeal pursuant to WIS. STAT. RULE 809.10(3).

    This court will use pseudonyms to reference the two children throughout. *See* WIS. STAT. RULE 809.19(1)(g).

[3] In his brief, M.B. refers specifically to the requirement that he "complete adult sex offender treatment," rather than to the recommendations set forth in the psychosexual evaluation as a whole, which included, but were not limited to, the sex offender treatment recommendation. Because the circuit court ordered M.B. to comply with the recommendations identified in the psychosexual evaluation, this court will refer to those recommendations as a whole rather than specifically to the adult sex offender treatment recommendation.

children" and the previous Minnesota no-contact order is no longer in place. This court affirms.

## I. BACKGROUND

¶2 The Manitowoc County Human Services Department received a referral concerning Jason's and Jackson's wellbeing in July 2021 after Jason reported that Jackson was "'tied up at night so that he doesn't get into things'" and that both boys slept on the floor without bedding or pillows. When the County initially received the referral, Jason and Jackson were living with their mother, A.B., their biological siblings, A.B.'s boyfriend, and the boyfriend's children. M.B., who lived in Minnesota at the time and later moved to Indiana, did not have contact with Jason and Jackson pursuant to a no-contact order in a pre-existing Minnesota Child in Need of Protection and Services (CHIPS) case.

¶3 The County ultimately filed CHIPS Petitions pursuant to WIS. STAT. § 48.13(10) for both boys in September 2021 and then in February 2022 filed Amended Petitions pursuant to § 48.13(4).[4] A Plea Questionnaire/Waiver of Rights (CHIPS and JIPS[5]) form filed in August 2022 indicates that M.B. admitted that Jason and Jackson were in need of protection and services pursuant to § 48.13(10).

---

[4] The circumstances surrounding the CHIPS Petitions are largely irrelevant to the issue on appeal, and it is therefore unnecessary to describe them in detail. It is sufficient to state that the Petitions arose after Jason and Jackson reported that, in addition to their sleeping arrangements, they were hit with items such as "a vacuum cleaner 'pipe,'" ruler, and fly swatter; that A.B.'s boyfriend "restricted their ability to breathe" by "plac[ing] his hand around each of their necks"; that food was withheld as punishment; and that "they are sent outside all day when their mom needs to clean or when they are in trouble."

[5] JIPS is the acronym for Juvenile in Need of Protection or Services.

3

¶4      The circuit court held dispositional hearings as to both Jason and Jackson on October 11, 2022, and December 19, 2022.  At the October 11th hearing, M.B. stipulated to all of the County's recommended conditions except for the condition that he "complete a psychosexual evaluation assessment and follow all recommendations of the assessment."  The court then entered an order adopting the stipulated-to disposition but without the required psychosexual evaluation/recommendations condition that M.B. objected to, leaving only that contested condition in dispute.

¶5      During the October 11th hearing, the circuit court heard testimony regarding multiple Minnesota cases involving M.B.[6]  The first case arose from a December 2017 incident where M.B. made his young daughter deliver a Christmas stocking with candy and a note to her ten-year-old friend.  The note stated it was "'[f]or [the ten-year-old] only – Make sure you are alone before opening'" and said, "'If you are not [the ten-year-old], turn back now!'" and that "'Anyone but [the ten-year-old] crossing this point is in Big Trouble!'"  The note read:

> I (heart) you! (and miss you)[.]  When the Lord tells you, take a walk down central street by yourself (probably sometime around midnight or after midnight) (don't cross [the] railroad tracks)[.]  I just want to talk.  Look for me by the train tracks[.]  Obey the Lord above all other things! (throw this out after you are done reading it)[.]  Do not be afraid, God is with you.

The note contained M.B.'s signature and included a map with the approximate location—near an abandoned property—where he wanted the ten-year-old to meet him.

---

[6] Multiple documents regarding those Minnesota cases are included in the Records in these matters, and the information described herein is from those documents and the corresponding hearing testimony.

¶6    The ensuing police investigation led to the discovery that on a previous occasion when the ten-year-old spent the night at M.B.'s house, M.B. woke her during the night by tickling her and rubbing her side, asked her to come to his office, told the ten-year-old he wanted to marry her, gave her a braided string ring, put headphones on her while the song "You'll Be in My Heart" was playing, and told her that he loved her. M.B. had also purchased a cell phone for the ten-year-old so she could communicate with M.B.'s daughter—but it also allowed M.B. to message the ten-year-old girl.

¶7    Minnesota police also received copies of multiple emails M.B. sent to various individuals regarding his intentions with the ten-year-old. Those emails included statements that:

- M.B. and his wife were interested in adopting the ten-year-old.;

- God told M.B. to tell the ten-year-old "loving things[.]";

- That "'God has revealed to me … his plan for [the ten-year-old]'" and that it was "'more than just having her live with my family until she is an adult and then sending her back into the world, it's giving her the option to live with me beyond high school/college if she needs/wants that.'";

- That he believed God wanted to put the ten-year-old "'in [his] care for the rest of [his] life'" and that "'[f]or that to happen, marriage would be an option for her (probably 10-15 years from now).'";

- That he was "'very aware of the statutory rape laws and would never want to jeopardize [the ten-year-old's] future by breaking any of these laws.'"; and

- That "'after God led me to watch the 1964 movie My Fair Lady (that ends with an older man falling in love with a very young woman),'" he "'knew our marriage could work.'"

5

¶8 As a result, in February 2018, the State of Minnesota charged M.B. with "Contributing to Need for Protection or Services," a gross misdemeanor. After an August 2019 bench trial, M.B. was convicted. Ultimately, the Minnesota Supreme Court upheld the conviction.

¶9 The investigation into the circumstances surrounding M.B's communications and relationship with the ten-year-old girl also led to the State of Minnesota charging M.B. with multiple counts of "Use [of] Minors in Sexual Performance/Pornographic Work" and multiple counts of possession of child pornography (collectively referred to as the "possession of child pornography charges") after police discovered nude and partially nude images of M.B.'s minor daughter on his computer while executing a search warrant. All charges related to those images were ultimately dismissed in March 2021 and June 2021. However, around the same time the State of Minnesota charged M.B. in that case, it also filed a CHIPS case as to all of M.B.'s children.

¶10 In the Minnesota CHIPS case, the court ultimately determined that M.B.'s children were in need of protection and services. Although the Minnesota court's decision in that case appears to have been based largely on facts related to the possession of child pornography charges, which were ultimately dismissed, it nevertheless also made numerous factual findings regarding M.B.'s conduct in regard to the case involving the ten-year-old girl. The Minnesota CHIPS court:

- Noted "[t]he allegations in [the CHIPS] case are based on criminal charges brought against" M.B. in the cases involving the ten-year-old girl and the possession of child pornography;

- Took "judicial notice of the harassment restraining order" the ten-year-old girl's aunt obtained against M.B. after he sent the note in the stocking;

6

- Noted emails M.B. sent explaining "the nature of his relationship" with the ten-year-old girl as being part of "God's plan" for M.B. and the ten-year-old, which included M.B. and his wife adopting the ten-year-old or M.B. marrying her;

- Noted another email in which M.B. again referenced God's plans for M.B. and the ten-year-old girl, stated how much he had missed the ten-year-old while she was at camp for a few days, and said that he had told her that he loved her;

- Found that M.B. told the ten-year-old girl that "he loved her and he believed God had a plan for them to marry 'many years down the road if she wanted that'" and that he told the ten-year-old "to keep this a secret";

- Found that M.B. had sent the ten-year-old girl text messages "telling her she was adorable, valuable and special" and that he had asked her "if she knew how to delete messages";

- Found that an officer who testified that M.B. displayed signs of predatory grooming behavior as to the ten-year-old girl and that M.B.'s children would be endangered by living with him was "credible and compelling"; and

- Found that M.B. "is attracted to young, vulnerable females."[7]

¶11    As a result of the Minnesota cases, M.B. completed a psychosexual/parenting assessment at CORE in Mankato, Minnesota, in October 2019. The resulting report indicated that M.B. had been "referred for a psychosexual/parenting assessment by Brown County [Minnesota] Human Services, after he was charged and convicted of one count of Contributing to the Need for Protection of a child" and that on the date of the assessment, "[a]n additional Sentencing Order was provided … in relation to [M.B.'s] conviction

---

[7] The Minnesota CHIPS court also made numerous findings related to the nude photographs of M.B.'s daughter; however, because the possession of child pornography charges based on those images were ultimately dismissed, it is unnecessary to detail the Minnesota CHIPS court's findings or charges associated with those photographs.

[regarding the ten-year-old], which indicated he was to complete a psychological evaluation, have no contact with the victim, and have no unsupervised contact with minors."

¶12    After describing M.B.'s background, the psychosexual evaluation details the various testing M.B. engaged in. Although multiple test inventories indicated the results were invalid for various reasons, including that M.B. had not fully completed the tests, the evaluating psychologist was nevertheless ultimately able to make recommendations based on the evaluation. Specifically, the report stated that:

> [M.B.] is not appropriate to independently parent his children, at the present time. He demonstrates clear deficits in parenting skills, as well as a lack of insight into appropriate behaviors around children, including alluding to adopting, and later marrying, a 10 year-old girl who is a friend of his daughter. [M.B.] appeared to struggle recognizing deficits in his parenting and the impact of his mental health in the assessment interview and testing, which needs to be addressed. He admitted to engaging in some of the behaviors addressed in the assessment, other than the sexual intent behind the messages he sent to the victim. However, he greatly minimized his behavior and the outcomes of that behavior. As such, [M.B.] should have no contact with the victim of his offense for Contributing to the Need for Protection or Services, or his biological children.

The report went on to recommend that "[i]n order to move toward contact with his children, [M.B.] should be required to complete" various programming, including "adult sex offender treatment programming" and "individual therapy, preferably in conjunction with his adult sex offender treatment programming, to address his Narcissistic Personality Disorder diagnosis." The psychologist also recommended that M.B. "not be allowed contact with minors under the age of 18" and noted that although "there is no evidence to suggest [M.B.] has acted out in a sexually

inappropriate manner toward minor males, his mental health is precarious, suggesting prudence in this area."

¶13    During the pendency of the present case, M.B. asked the Minnesota CHIPS court (that had imposed the no-contact order between M.B. and his children) to hold a motion hearing to address that court's continuing jurisdiction over M.B. and his children.  The Minnesota CHIPS court held the requested hearing in August 2022.  That court, however, ultimately closed its file, stating that its "jurisdiction is terminated[.]"  In doing so, it noted that Jason and Jackson had moved to Manitowoc County with their mother and did not intend to return to Minnesota, that M.B. did not reside in Minnesota and had no intention of returning, and that "Wisconsin has an active child-protection matter involving at least one of the children[,]" and therefore, "[c]ontinued jurisdiction" by the Minnesota CHIPS court was no longer "necessary to assure the children's safety."

¶14    After hearing testimony at the CHIPS disposition hearing in the present matter, along with having considered the documentation provided regarding M.B.'s Minnesota court cases and the psychosexual evaluation, the Manitowoc County Circuit Court determined that requiring M.B. to comply with the recommendations set forth in the psychosexual evaluation, which included adult sex offender treatment, was an appropriate condition of return.[8]  In reaching this conclusion, the court noted M.B.'s "argument that there is no evidence on this

_____

[8] After the October 2022 hearing, the County filed an amended dispositional order in which it recommended that M.B. comply with the psychosexual evaluation's recommendations rather than also recommending a new psychosexual evaluation as it had recommended in the original dispositional order.

record that he has done anything inappropriate with his children" but went on to state:

> [T]o some extent I would call that a somatic…. [I]n the Minnesota case -- which has not been disputed as far as from factual information -- is he utilized his daughter, a child, in behaviors in assisting grooming behaviors in terms of his pursuit and interest in a ten year old child.
>
> Next, there's no reference that the psychosex eval is inaccurate or wasn't properly done from an analysis standpoint by a qualified individual. As you read through [the evaluation], the analysis by the evaluator and the recommended treatment is quite concerning as it relates to children, and his interests from the analysis in this evaluation about children -- that being a young ten year old child.
>
> And the actions taken by [M.B.] in terms of pursuing a ten year old child for a relationship is unfounded. It's not unfounded, but it's totally inappropriate, and that really causes the Court pause.
>
> ….
>
> Nothing has been done since [the psychosexual evaluation]. Again, it's not like a light switch. And as you look at this there's a lot, a lot of concerns. And that behavior is unacceptable and it needs to be addressed as recommended in this evaluation from Minnesota.

The court also acknowledged that it had been three years since M.B. had undergone the psychosexual evaluation in Minnesota but noted that M.B. had not done any treatment since the evaluation and that it therefore made more sense to require him to follow through with the recommendations rather than ordering him to undergo a new psychosexual evaluation, which it was otherwise "going to recommend … at a minimum[.]"

¶15    M.B. appeals the circuit court's order that he comply with the psychosexual evaluation's recommendations as a condition of return.

## II.  STANDARD OF REVIEW

¶16    This court reviews a challenge to a circuit court's dispositional order under a deferential standard of review and upholds the order unless the circuit court erroneously exercised its discretion.  *State v. Richard J.D.*, 2006 WI App 242, ¶5, 297 Wis. 2d 20, 724 N.W.2d 665.  "The circuit court properly exercises its discretion when it examines the relevant facts, applies the proper legal standard, and uses a rational process to reach a reasonable conclusion."  *Id.*  If the circuit court does not sufficiently explain its reasoning, the appellate court may search the record to determine whether the record supports the circuit court's discretionary decision.  *Steiner v. Steiner*, 2004 WI App 169, ¶18, 276 Wis. 2d 290, 687 N.W.2d 740.  The circuit court's factual findings "will not be disturbed unless they are clearly erroneous.  A finding of fact is clearly erroneous if it is against the great weight and clear preponderance of the evidence."  *Lowe's Home Ctrs., LLC v. City of Delavan*, 2023 WI 8, ¶25, 405 Wis. 2d 616, 985 N.W.2d 69 (internal citation omitted).  "The weight and credibility to be given to testimony is uniquely within the province of the trial court."  *Noble v. Noble*, 2005 WI App 227, ¶16, 287 Wis. 2d 699, 706 N.W.2d 166.

## III.  DISCUSSION

¶17    M.B. asserts that the circuit court gave "too much weight" to his multiple Minnesota cases when it required him to comply with the recommendations identified in the psychosexual evaluation as a condition of return.  This court is not persuaded.

¶18    Although the circuit court heard testimony and had documentation regarding all three of M.B.'s Minnesota cases before it, the circuit court relied almost exclusively upon M.B.'s conviction related to the ten-year-old girl as the

11

basis for ordering M.B. to comply with the psychosexual evaluation's recommendations as a condition for return in the CHIPS cases at issue here. Specifically, the circuit court referenced "the Minnesota case" in which M.B. "utilized his daughter, a child, in behaviors in assisting grooming behaviors in terms of his pursuit and interest in a ten year old child" and noted that M.B.'s behavior was "totally inappropriate" and gave "the Court pause." Additionally, the psychosexual evaluation itself—which the court informed the parties it would consider—went so far as stating that M.B. "is not appropriate to independently parent his children[] at the present time[,]" that he "demonstrate[d] clear deficits in parenting skills, as well as a lack of insight into appropriate behaviors around children, including alluding to adopting, and later marrying, a 10 year-old girl," and that M.B. had "greatly minimized his behavior and the outcomes of that behavior" as it related to the ten-year-old girl. Relying on the psychosexual evaluation, the court noted that "the analysis by the [psychosexual] evaluator and the recommended treatment is quite concerning as it relates to children, and his interests from the analysis in this evaluation about children -- that being a young ten year old child."

¶19 Based on all of this information, the circuit court indicated that at the very least, it "would have recommended [another psychosexual evaluation] at a minimum" as a condition for M.B. in the CHIPS cases at issue here. However, because M.B. had not undergone further treatment or followed through with the psychosexual evaluation's recommendations in the approximately three years since that evaluation had taken place, it chose to instead require M.B. to comply with those recommendations as a condition in these cases. Given the nature of M.B.'s conviction in regard to the case involving the ten-year-old girl and the fact that Jason and Jackson are only a few years older than the victim in that case was

at the time, the circuit court's conclusion requiring M.B. to comply with the recommendations set forth in the psychosexual evaluation was reasonable. Having reviewed the Records, it is clear that the circuit court here "examine[d] the relevant facts, applie[d] the proper legal standard, and use[d] a rational process" in reaching this conclusion. *See Richard J.D.*, 297 Wis. 2d 20, ¶5.

¶20 To the extent M.B. argues the circuit court erred in ordering him to comply with the psychosexual evaluation's recommendations because the charges in the Minnesota possession of child pornography case were dismissed, it is clear from the Records that the circuit court did not rely on the charges in that case in reaching its decision here. To the contrary, and as noted above, the court limited its discussion of M.B.'s Minnesota cases to the case involving the ten-year-old girl and the psychosexual evaluation's references to that same case. The court's ruling did not mention the nude photographs of M.B.'s daughter or the resulting felony charge case at all. The Records demonstrate that the circuit court based its decision only upon M.B.'s conviction pertaining to his relationship and interactions with the ten-year-old girl.

¶21 As to M.B.'s second argument—that the circuit court erred when it included him on the dispositional order under WIS. STAT. § 48.13(4) because the court "kn[ew] that M.B. has never abused or neglected his children and that M.B. no longer has a No Contact Order in Minnesota"—it is unnecessary for this court to address this issue for two reasons. First, because M.B. failed to file a Reply, he is deemed to have conceded that the County's assertion that he was "properly included" because the circuit court "considered all stipulations, reports, testimony, and arguments when it made its decision" is correct. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments deemed conceded). Second, it does not appear that

M.B. raised this issue before the circuit court, and this court need not address arguments raised for the first time on appeal. *See State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727; *State Farm Mut. Auto. Ins. Co. v. Hunt*, 2014 WI App 115, ¶32, 358 Wis. 2d 379, 856 N.W.2d 633.

¶22     Based on the foregoing, this court concludes that the circuit court did not erroneously exercise its discretion when it included a requirement that M.B. comply with the recommendations set forth in the Minnesota psychosexual evaluation/assessment in the dispositional orders M.B. challenges here. Accordingly, this court affirms both dispositional orders.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.