**COURT OF APPEALS
DECISION
DATED AND FILED**

**February 23, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2022AP173**

**STATE OF WISCONSIN**

Cir. Ct. No.  2020FA1720

**IN COURT OF APPEALS
DISTRICT IV**

IN RE THE MARRIAGE OF:

AARON SEITZ,

   PETITIONER-APPELLANT,

 V.

BETH SEITZ,

   RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Dane County: FRANK D. REMINGTON, Judge. *Affirmed in part; reversed in part and cause remanded with directions*.

Before Blanchard, P.J., Fitzpatrick, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Aaron Seitz appeals a circuit court order granting a judgment of divorce from Beth Seitz.[1]  Aaron raises three sets of challenges to circuit court rulings, the first two being determinations regarding the property division:  setting the value of a pickup truck; and addressing the divisibility of certain debts and the size of debts.  Separately, Aaron challenges a maintenance determination ordering Aaron to pay Beth $1,000 per month for an indefinite period.  We affirm on the issues involving the pickup truck and maintenance award and remand for amendment of the judgment to correct errors regarding the debts.

## BACKGROUND

¶2      Beth and Aaron were married in March 2005, a petition for divorce was filed in October 2020, and the divorce judgment was entered in November 2021.

¶3      The parties submitted to the circuit court a partial marital settlement agreement addressing custody and placement issues, which was accepted by the court.  However, the parties generally reserved for a contested hearing their disputes over property division and maintenance issues.  At the hearing, both parties were represented by counsel, as they are again now on appeal.  During the course of the hearing, the parties were able to reach stipulations on some but not all issues and the court considered evidence from witnesses, including testimony from both Beth and Aaron, to resolve open issues.

---

[1]  We use the parties' first names because they share a last name.

¶4     Following this hearing, the circuit court issued the divorce judgment, which incorporated the partial marital settlement agreement, set forth the division of the marital property, and ordered Aaron to make maintenance payments to Beth.   Aspects of the judgment are summarized below as necessary to explain arguments made on appeal and our decisions.

## DISCUSSION

¶5     The following legal standards apply to multiple issues in this appeal:

> The division of property … and determination of maintenance in divorce actions are decisions entrusted to the discretion of the circuit court, and are not disturbed on review unless there has been an erroneous exercise of discretion.   "[A] discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination."   A circuit court's discretionary decision is upheld as long as the court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach."

*LeMere v. LeMere*, 2003 WI 67, ¶13, 262 Wis. 2d 426, 663 N.W.2d 789 (citations omitted).

¶6     In reviewing a circuit court's discretionary decision, we review issues of law independently, but we will not overturn the court's factual findings unless they are clearly erroneous.   WIS. STAT. § 805.17(2) (2021-22);[2] *Covelli v. Covelli*, 2006 WI App 121, ¶13, 293 Wis. 2d 707, 718 N.W.2d 260.   In addition,

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

3

we search the record for reasons to sustain the court's discretionary decisions. *Steiner v. Steiner*, 2004 WI App 169, ¶18, 276 Wis. 2d 290, 687 N.W.2d 740.

¶7　　We now address the three sets of issues in turn, providing additional legal authority and background information as necessary.

## I.　　PROPERTY DIVISION:　TRUCK VALUATION

¶8　　Aaron argues that the circuit court erroneously exercised its discretion in placing a value of $47,000 on a 2015 Chevrolet Silverado pickup truck for purposes of the property division. Aaron contends that the court erroneously exercised its discretion in allowing Beth to call a witness, James Ryan, to testify on this topic and in considering two exhibits that Ryan testified about. We reject these arguments on two independent grounds. First, Aaron failed to raise a precise objection to either ruling at the time of the hearing. Second, even if objections had been raised, Aaron fails to show that the court erroneously exercised its discretion in allowing Ryan to testify or, to the extent that the court did so, in relying on the exhibits.

¶9　　Evidentiary objections must be raised with clarity and in a timely manner. *See State v. Hartman*, 145 Wis. 2d 1, 9, 426 N.W.2d 320 (1988) (an evidentiary objection must clearly state the specific ground upon which the objection is based, and an objection preserves for appeal only the specific grounds stated in the objection). "The purpose of requiring an adequate objection to preserve an issue for appeal is to give the parties and the court notice of the disputed issue, as well as a fair opportunity to prepare and address it in a way that most efficiently uses judicial resources." *State v. Kutz*, 2003 WI App 205, ¶27, 267 Wis. 2d 531, 671 N.W.2d 660.

¶10    We "review a circuit court's decision to admit or exclude evidence under an erroneous exercise of discretion standard." **Martindale v. Ripp**, 2001 WI 113, ¶28, 246 Wis. 2d 67, 629 N.W.2d 698.  The circuit court has broad discretion in making evidentiary rulings, which we uphold so long as the court examined the relevant facts, applied the correct legal standards, and reached reasonable conclusions.  **Id.**  When the court fails to set forth adequate reasons for its evidentiary decision, we independently review the record to determine whether it properly exercised its discretion.  **Id.**, ¶29.

¶11    In addition, circuit courts are entrusted with "the discretion to exclude the testimony of a witness if a party is prejudiced by the opposing counsel's failure to inform [the party] of the intent to call that witness." **Milwaukee Rescue Mission, Inc. v. Redevelopment Auth. of Milwaukee**, 161 Wis. 2d 472, 490, 468 N.W.2d 663 (1991) (citing **Fredrickson v. Louisville Ladder Co.**, 52 Wis. 2d 776, 782, 191 N.W.2d 193 (1971)).  We also note that our supreme court has made the following general observation:  "Forbidding a party to call a witness is a drastic measure in a trial, where truth is sought." **Fredrickson**, 52 Wis. 2d at 784.

¶12    The following is additional background on this issue.  On October 26, 2021, the day before the hearing, Beth filed with the circuit court the following two exhibits:  (1) an undated "To whom it may concern" letter by James Ryan of Auto Works, Inc., of Madison, estimating the "retail value" of the pickup truck at $49,200, assuming mileage of 140,000 miles and average condition; and (2) what appears to be a screenshot from some sort of internet application called "Manheim" giving an "estimated retail value" of an unidentified item (from context, the truck) as $49,200.

¶13   The hearing started on the afternoon on October 27, 2021. Counsel for Aaron represented to the circuit court that she received the exhibits at 8:27 a.m. that morning. In response, counsel for Aaron filed "rebuttal exhibits" in advance of the hearing.

¶14   At the hearing, Aaron's counsel first argued that the pickup truck should be valued at $28,507, based on a Kelley Blue Book trade-in valuation, and then later said that its value is $28,000, but that due to an outstanding loan balance of $34,000, the truck "doesn't have a value." The circuit court took the position that the Kelley Blue Book trade-in value would not be apt and asked about the Kelley Blue Book value for either a cash offer or a private party sale. Aaron's counsel responded that her client went online, during the hearing, and discovered that the private party sale value was $28,784. Implicitly acknowledging that quoting data purportedly found on the internet during the hearing might not be acceptable to the court, Aaron's counsel said that "if we were going to do this in a more formal setting, I would have objected to" the two exhibits filed by Beth the day before the hearing. Aaron's counsel also asserted that she was "blind-sided" by Beth's exhibits and that Aaron "might have gotten the vehicle appraised" if Beth had provided the exhibits earlier.

¶15   Beth's counsel argued that the truck should be valued at $49,200, based on the exhibits he filed the day before the hearing.

¶16   The circuit court construed Aaron as making an objection to the exhibits on hearsay grounds, which the court sustained. However, the court explained that this left the court with "really [nothing] to go on" in the way of facts to use in valuing the truck.

6

¶17    Beth's counsel offered to solve this problem by calling James Ryan as a witness to testify by phone, and the circuit court accepted this approach without objection by Beth's counsel.

¶18    Ryan testified in part as follows. He buys and sells cars and trucks as a state licensed car and salvage dealer; he has bachelor's and master's degrees in finance with an emphasis on accounting. Like "most dealers," Ryan relies on an internet application called Manheim Auto Auctions to value vehicles. Using the basic information about the truck here, Manheim reported an estimated retail value of $49,200 to $62,300, with a slightly lower value if the mileage were 170,000 miles and not 140,000 miles.

¶19    Counsel for Aaron was permitted to cross examine Ryan with as many questions as counsel had. Aaron did not separately object to references being made during the course of Ryan's testimony to the two exhibits that Beth filed the day before the hearing.

¶20    In making its findings on this issue, the circuit court explained that it would substantially credit Ryan's phone testimony and would also take into account the Kelley Blue Book private sale valuation to reach a value of $47,000. The court further ruled that, because Aaron retains the truck and all of its debt and the net value is divided equally between the parties, Aaron must make an equalization payment to Beth of $4,527.73 (although, for reasons we explain separately below, this amount must be adjusted based on two errors by the circuit court that do not involve the court's valuation of the pickup).

¶21    We conclude the background on this issue with the following point. Aaron asserts that the circuit court ordered the parties to file all hearing exhibits by October 20, 2021, and bases his first argument in part on the premise that Beth

violated a scheduling order of the court. But for this proposition Aaron cites only to an assertion by his attorney at the hearing and not to any court order. Aaron has failed to make a transcript of the status conference a part of the record. In addition, in its discussion of this issue at the October 27, 2021 hearing, the court did not refer to any scheduling order. Given the state of the record, we lack a sufficient basis to conclude that there was a court order to this effect.

¶22 Turning to the forfeiture issue, Aaron did not object to Beth calling Ryan as a witnesses at the hearing. We conclude that this aspect of the current argument was not preserved.

¶23 As for the circuit court's use of the exhibits at the hearing, the record reflects that, while the letter and the Manheim screen shot were referenced during Ryan's testimony, that occurred only to the extent that Ryan was essentially refreshed about his opinions by looking at them. Further, Aaron's counsel did not object to this specific use of the exhibits and more generally was unclear regarding the nature of counsel's requests of the court regarding the exhibits (telling the court at one point, "if we were going to do this in a more formal setting, I would have objected"). Therefore, we conclude that this issue was also not preserved sufficiently in the circuit court for the issue to be raised on appeal.

¶24 Turning to our second, independent ground for affirmance, Aaron does not persuade us that the circuit court erroneously exercised its discretion in making either of the two challenged decisions: to allow Ryan to testify (with a full opportunity for cross examination) and the extent to which the court allowed Ryan to refresh his memory with the exhibits. In an equitable manner, the court invited both sides to offer whatever evidence they had regarding the value of the truck to assist the court in the necessary task of reaching some reasonable value

for the truck. As far as the record reflects, the court made reasonable use of all of the evidence, including that offered by Aaron. Aaron does not explain how, given the circumstances as they unfolded, the approach that the circuit court took at the hearing was an erroneous exercise of discretion. Aaron now makes a factual argument about the difference between fair market value and retail value, but he had a full opportunity make any such argument at the time of the hearing. In allowing Ryan to testify, without objection, the court did not prevent Aaron from advancing such an argument.

## II. PROPERTY DIVISION: DEBTS

¶25 Aaron argues that the circuit court made two separate errors in determining the debt that should be allocated to Aaron and that, as a result, he was improperly ordered to make an equalization payment to Beth of $4,527.73 when, absent the two errors, Beth should be ordered to pay Aaron approximately $111.00. The first alleged contributing error is an issue of law, namely, categorizing four debts totaling $2,547.48 as non-divisible and the responsibility of Aaron alone to repay. The second alleged contributing error is one of fact, namely, determining that the debts allocated to Aaron totaled $11,500.00 when in fact they totaled $22,157.34 (when the $2,547.48 in debt is properly deemed divisible). We conclude that the court erred on both the legal point and the factual point, and therefore a remand is necessary to amend the judgment to require Beth to pay Aaron $111.00 in lieu of Aaron being required to pay Beth $4,527.73.

¶26 Aaron relies on "the general rule," which is "that assets and debts acquired by either party before or during the marriage are divisible upon divorce," and that a party claiming that an asset or debt is non-divisible must prove that it is exempt under WIS. STAT. § 767.61(2). *Derr v. Derr*, 2005 WI App 63, ¶¶10-11,

9

280 Wis. 2d 681, 696 N.W.2d 170. Aaron contends that the circuit court's decision here to exclude debts from divisible property based solely on the timing of the filing of the petition for divorce ignored the standard in *Derr* and relieved Beth of her obligation to prove an exemption under § 767.61(2).

¶27 Beth's arguments on this set of issues are difficult to track, in part because her briefing for the most part lacks appropriate references to the parts of the record relied on, in violation of WIS. STAT. RULE 809.19(d), (e). She does not raise any issue of accuracy regarding the specific figures that Aaron provides in making his arguments. In any case, we reject each of her arguments, which we now address.

¶28 The closest Beth comes to engaging with Aaron's argument on its own terms is to base an argument on *Weiss v. Weiss*, 122 Wis. 2d 688, 365 N.W.2d 608 (Ct. App. 1985), as if that opinion stands for the broad proposition that all debts incurred by either party after the commencement of a divorce are non-divisible. However, as Aaron explains, the court in *Weiss* relied on evidence of an explicit agreement of the parties that debt incurred for specific purposes was the responsibility of one party, and therefore that opinion is completely distinguishable from the facts here. *See id.* at 699 n.3. Outside of her misplaced reliance on *Weiss*, Beth makes no argument supporting the circuit court's decision on the merits, including no attempt to address WIS. STAT. § 767.61(2).

¶29 Separately, Beth asserts that the parties "waived their arguments on appeal regarding the findings as to their respective debts." In contrast, with the benefit of record citations, Aaron supports an argument that he agreed at the hearing to the amounts and allocation of debt, but not to the exclusion of debt from the divisible property nor to a miscalculation of debts. We reject this argument by

Beth as undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (arguments may be rejected based on a lack of development, including lack of record support).

¶30     In addition, Beth suggests that Aaron cannot bring these arguments on appeal because he did not object to these "manifest" errors at the hearing or in a post-judgment motion for reconsideration under WIS. STAT. § 805.17(3).  On the first point, Beth fails to direct us to record support for the proposition that Aaron did not sufficiently articulate to the circuit court a request for accurate resolution of the debt issues.  Further, a party is not required to argue with a circuit court after it has rendered its ruling.  On the second point, Beth fails to persuade us by reference to pertinent record evidence that we should deem these arguments forfeited, given the particular circumstances here, and she ignores the fact that this calls for a discretionary decision by this court.  *See Schinner v. Schinner*, 143 Wis. 2d 81, 94, 420 N.W.2d 381 (Ct. App. 1988) (failure of party in divorce action to bring motion for circuit court to amend findings or make additional findings regarding math errors did not cause forfeiture that required appellate court to reject claim of math errors on appeal).  We observe that Beth fails to direct us to any way in which Aaron contributed to or ratified these errors, which is one relevant consideration.

¶31     Having rejected the only arguments that Beth makes, we are left with the persuasive arguments that Aaron makes that the court erred in both respects.  Remand is necessary to fix these errors regarding the property division in the judgment of divorce.

### III. MAINTENANCE

¶32     Aaron argues that a new trial is required on the maintenance award to Beth of $1,000 per month for an indefinite term because the circuit court "did not consider the unequal property division it inadvertently ordered, the tax consequences to the parties, and the standard [of living] enjoyed [by the parties] during the marriage." Beth argues that the court had available the relevant facts and considered the pertinent factors in a proper exercise of its discretion. Aaron fails to persuade us that the court erroneously exercised its discretion.

¶33     We have already explained the discretionary nature of maintenance decisions by circuit courts under the applicable legal standard. In addition, our supreme court has explained the following:

> Pursuant to [WIS. STAT.] § 767.56, a circuit court "may grant an order requiring maintenance payments to either party for a limited or indefinite length of time" after considering a list of enumerated factors. …[I]t is within the circuit court's discretion to determine the amount and duration of maintenance. However, the factors enumerated in § 767.56 should be the "touchstone of analysis" when a court sets maintenance.
>
> There are two objectives that an award of maintenance seeks to meet. The first objective is support of the payee spouse. This objective may not be met by merely maintaining the payee spouse at a subsistence level. Rather, maintenance should support the payee spouse at the pre-divorce standard. This standard should be measured by "the lifestyle that the parties enjoyed in the years immediately before the divorce and could anticipate enjoying if they were to stay married." The second objective is fairness, which aims to "compensate the recipient spouse for contributions made to the marriage, give effect to the parties' financial arrangements, or prevent unjust enrichment of either party."

*McReath v. McReath*, 2011 WI 66, ¶¶43-44, 335 Wis. 2d 643, 800 N.W.2d 399

(footnote and citations omitted).[3]

---

[3] The factors that are the "touchstone of the analysis" are listed in WIS. STAT. § 767.56:

(1c) FACTORS TO CONSIDER FOR GRANTING. Upon a judgment of … divorce, … the court may grant an order requiring maintenance payments to either party for a limited or indefinite length of time, … after considering all of the following:

(a) The length of the marriage.

(b) The age and physical and emotional health of the parties.

(c) The division of property made under [WIS. STAT. §] 767.61.

(d) The educational level of each party at the time of marriage and at the time the action is commenced.

(e) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

(f) The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

(g) The tax consequences to each party.

(h) Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, if the repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

(i) The contribution by one party to the education, training or increased earning power of the other.

(continued)

¶34 Bearing in mind these standards of review and substantive legal standards, we now summarize the circuit court's discussion of maintenance and then address in turn the three component parts of Aaron's argument.

¶35 Beth argued to the circuit court that she was not asking for a maintenance award equal to a division of their combined incomes, which would have been $1,646 per month, but instead $1,000 per month for an indefinite period.[4] Aaron argued that maintenance should be denied to both parties.

¶36 Facts that include the following were presented to the circuit court: the marriage lasted 16 years; at the time of the divorce, Beth was 43 and had some health issues, and Aaron was 46 and healthy; both had some college education; Beth's gross monthly income was $2,355 and Aaron's was $5,547; Beth could earn slightly more per month than she was currently earning, but Aaron was at his full potential earning capacity; during the marriage, Beth and Aaron cared for four children;[5] Aaron was providing and would continue to provide support for a disabled adult child of Beth and Aaron; and they were separated for approximately

---

(j) Such other factors as the court may in each individual case determine to be relevant.

[4] This way of framing the issue is based on *Bahr v. Bahr*, 107 Wis. 2d 72, 318 N.W.2d 391 (1982), in which our supreme court explained that it is reasonable for a circuit court to calculate maintenance by starting with a presumption of an equal division of total income. *Id.* at 84-85. To ensure that the award is fair and provides adequate support, the court can adjust this fifty-fifty starting point by applying the factors in WIS. STAT. § 767.26. *Bahr*, 107 Wis. 2d at 84-85.

[5] Elaborating, the circuit court was informed that, for a few years at the beginning of the marriage, Beth did not work outside the home and had primary custodial responsibilities for the children, while for the two-and-a-half years before the divorce Aaron had full custodial responsibilities for the only child who was still a minor at the time of the divorce—but who would reach majority just eight months after the divorce.

14

two-and-a-half years before the divorce and neither had provided financial support to the other over that time.

¶37 Beth's counsel took the following positions: "Beth has lived the last two and half years in very, very meager circumstances, not anywhere close to the standard of living that she enjoyed when the parties were living together." Aaron's counsel took positions that the parties "did not enjoy financial well-being during the marriage," that they "continued to struggle" even after a joint bankruptcy in 2012, and that "[t]hey're both negative every month."

¶38 In making its maintenance determination, the circuit court made findings and statements that noted the facts above and included the following. Beth and Aaron "both have struggled" financially and are "maybe living from paycheck to paycheck." In particular, the court said, Beth "needs to supplement her income through the use of maintenance so she can pay her bills." The court noted that the *Bahr* starting point, *see supra* n. 4, would require Aaron to pay Beth $1,646 per month, although because Beth's earning capacity is higher, "I would deduct off of that $100." The court further noted that, with that small exception for Beth's capacity, there was not a reasonable prospect that either Beth or Aaron would have a different income during their working lives. The court observed that the division of the relatively small marital estate is approximately equal.

¶39 The circuit court acknowledged Aaron's position that he had little income after then-current expenses to apply toward maintenance, but emphasized that the court's obligation is to apply the factors under WIS. STAT. § 767.56 and the considerations of support and fairness. The court said that it was taking into account Aaron's relatively modest income and relatively high debt in arriving at

the $1,000 figure, which "might have" been "more, probably not less," as an "accommodation" to Aaron's circumstances.

¶40 The logic of the circuit court's application of the relevant statutory factors is evident—using the *Bahr* starting point as a reference and then taking into account relevant factors to lower that amount—and we conclude that it was sufficient. If there could be a shortcoming in the court's explicit analysis, it might be that the circuit did not in so many words directly address the indefinite term, as opposed to setting a time limit. However, the court did emphasize that there appeared to be little prospect that the financial circumstances of Beth or Aaron, including their respective incomes, would change in the future (putting aside Beth's ability to earn slightly more, which the court took into account), so that Beth's significant need for support would continue indefinitely and Aaron's ability to meet those needs, although modest, would remain static into the future.

¶41 We turn now to Aaron's specific arguments. He points out that the circuit court "did not consider the unequal property division it inadvertently ordered," discussed separately above. We have explained why we agree that the court erred on this specific set of issues. Naturally, the court did not consider errors that it did not know that it was committing. The problem with Aaron's specific argument as a challenge to the maintenance award is that it is incomplete at best. He fails to show how any aspect of the court's errors could have contributed to a maintenance award that is too large or should be of a limited duration, given the court's reasoning in setting maintenance. Notably, the errors were not large in dollar amounts as compared with the value of indefinite monthly $1,000 maintenance payments. If there is something about these errors that renders the maintenance award defective, Aaron fails to explain what it is.

¶42 Separately, Aaron argues that the circuit court failed to consider the tax consequences of maintenance to the parties. The argument rests on a distortion of the record, which requires the following additional background to understand.

¶43 During the course of a dialog with counsel about the interplay of the maintenance and short-term support issues, the circuit court explained that it saw no reason for Aaron to pay $1,000 per month in maintenance to Beth "only then to have her pay" monthly child support "back" to Aaron, at least during the short period in which the youngest child was still a minor. The court asked, "Are the parties amendable to a structure in which Ms. Seitz's maintenance amount is reduced by the child support?" Both attorneys said yes to the proposal of an offset. The court then said, "Okay. Just to be completely transparent, I don't know how, if at all, that would affect taxes." The import of this statement, in context, was that the court was not sure how taxing authorities might view the specific mechanism of an offset. Beth's counsel responded, "It doesn't," and Aaron's counsel had no response. The court then explained the offset in a little more detail and then asked if either party had any comments or questions. Aaron's counsel responded no.

¶44 With that additional background, Aaron's argument rests on the false premise—supposedly based on the circuit court's statement that it did not know "how, if at all, that would affect taxes"—that the court admitted that it had no idea how the maintenance award it was ordering would affect the tax situations of the parties. This is an unreasonable interpretation of the record, and we reject the argument on that basis. Further, Beth's counsel informed the court that there would not be any tax consequence, and Aaron on appeal fails to explain why the court should have thought that this answer was incorrect.

17

¶45 Separately, Aaron argues that the circuit court failed to consider the standard of living enjoyed by the parties during the marriage. It is not clear what this argument is based on. There was evidence, supplemented by consistent proffers by both sides at the hearing, that provided a sound basis for the court to draw relevant conclusions about the standard of living during the marriage. Further, the court made numerous observations about the historical as well as current financial circumstances of the parties. As far as we can discern, Aaron is arguing that we should conclude that the circuit court should have weighed the evidence and considered the arguments of the parties in a different light than it did. Under our standards of review, we cannot do this.

## CONCLUSION

¶46 For all of these reasons, we affirm the circuit court's rulings setting the value of the pickup truck and determining maintenance; reverse the rulings regarding the divisibility of certain debts and the size of debts as specified in this opinion; and remand for amendment of the judgment to correct the specified errors regarding the debts, producing the equalization payment identified by Aaron.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.